## CHASE *vs.* DWINAL.

The acts establishing boom corporations impose upon the owners of lumber the liability to pay toll for the security and preservation of their property; but do not attach to rafts intended to pass down the river, but accidentally stopped by the boom, where its use and security were not sought or desired.

Where money has been paid under such duress or necessity as may give it the character of a payment by compulsion,—such as money paid to liberate a raft of lumber detained in order to exact an illegal toll,—it may be recovered back.

THIS case, which was *assumpsit* for money had and received, came before the court upon exceptions taken by the defendant to the opinion of *Smith J.* before whom it was tried in the court below.

The plaintiff was conducting his raft down the *Penobscot* river; and when he came near the boom of the defendant, which was erected under a charter from the State, he was unable to pass it through the passage-way left for that purpose; and by force of the wind and current it was driven eastward of the passage, and stopped by the defendant's boom. The plaintiff, with other assistance, immediately made exertions to free it from the boom and conduct it through the passage, which in two or three hours was effected. One of the defendant's hired men, who assisted the plaintiff, demanded seventy five cents for this service, which the plaintiff refused to pay. Afterwards the defendant demanded of the plaintiff six dollars and forty cents, being the regular boomage for the raft; which the plaintiff refusing to pay, the defendant stopped and detained the raft, till the plaintiff paid the sum demanded; to recover which this action was brought.

There was evidence on both sides, tending to show the difficulty of passing the boom, which extended nearly across the river; and on the other hand the facility of passing it, with proper care and skill.

The judge instructed the jury that he considered it intended by the statute authorizing the erection of the boom, that the owner

should receive a compensation for drift-timber stopped by it, as well as for the timber placed in it for security or convenience. In such cases the owners of the lumber receive a benefit from the boom, and ought to pay the compensation fixed by law. On the contrary, if by reason of the navigation of the river being obstructed by the boom, a raft is impelled by the winds and current, into the boom, against the will of the owner and conducter; who without delay, in a reasonable time, proceed to get it clear from the boom, as was done by the plaintiff; the owner of the raft was not liable to pay the boomage. He further instructed them that if they should find, upon these principles, that the defendant had no right to claim the boomage, and that the plaintiff was obliged to pay the money in order to procure the release of his raft, he might well recover the money in this action.

And the jury having found for the plaintiff, the defendant filed these exceptions pursuant to the statute.

*Rogers*, in support of the exceptions, argued that the toll granted by the act was analogous to the like grant in the case of bridges and turnpikes; in which cases it is not for any man to say he passed the bridge or road involuntarily, in order to avoid payment of the toll. It is enough that it was actually passed. The language of the act is clear and unambiguous, and the right to stop rafts is expressly given. 7 *Mass.* 524; 3 *Mass.* 256. The legislature might well have discontinued the river as a public highway; and having this right, it was competent to limit the public use by a toll.

The statute may be construed as transferring to the defendant all the right which the public had to the navigation of the river in that place; thus making the space necessarily occupied for the use of the boom the close of the defendant. In this view the plaintiff was a trespasser. If the erection or continuance of the boom was an injury to him, he should pursue the mode specially provided in the statute on this subject.

But the money was received as well for assisting to remove the logs, as for stopping and securing them; and this form of action being of the nature of a bill in equity, the plaintiff must show that the

defendant has received money which, *ex æquo et bono,* he ought not to retain. 2 *D. & E.* 370; *Cowp.* 793.

In any view, it was a voluntary payment, and therefore cannot be recovered back. 1 *Selwyn's N. P.* 66; *Knibbs v. Hall,* 1 *Esp.* 84; *Brown v. McKinally, ib.* 279; *Lothian v. Henderson,* 3 *B. & P.* 520; *Brisbane v. Dacres,* 5 *Taunt.* 143; *Fulham v. Down,* 6 *Esp.* 26; *Hall v. Schultz,* 4 *Johns.* 240.

*Godfrey,* for the plaintiff.

WESTON J. delivered the opinion of the Court at the ensuing *July* term in *Waldo.*

The defendant claims, in behalf of the *Penobscot* boom corporation, a right to receive and retain as toll, the money attempted to be reclaimed in this action. If he has such right, the action cannot be supported. The act, establishing this corporation, grants them a toll for stopping and securing the several kinds of timber, mentioned therein, whether drifted or rafted down the river. The franchise of taking toll granted to the corporation, was manifestly in consideration of valuable services rendered. The benefit and advantage was intended to be reciprocal. To the corporation a compensation for the use of their boom, and to the owners of the timber, the security and preservation of their property, arising from such use. It never could have been contemplated that the owners should have been compellable to pay, without seeking or deriving any benefit from the boom. Where their purpose was, to avail themselves of an uninterrupted passage down the river for their rafts, this object might be impeded by the boom, but could not be promoted by it. In the case before us, the plaintiff derived no benefit from the boom, but his raft was retarded and obstructed by it in its progress. It has been contended that by the fifth section of the act, the toll was given for the benefit of the corporation. Doubtless the toll was given for their benefit, but that for which it was given was a benefit confered, not for an injury inflicted, upon the party holden to pay such toll. It is further urged, that it was competent for the legislature to deprive the public altogether of the use of the river, or to permit its use upon such terms,

as they might think proper to prescribe ; and that in virtue of the act, the corporation have a right to toll ; although they confer no benefit whatever on the party to be charged. The terms of an act must be very clear and unequivocal, to justify a construction which would take money from one man and bestow it upon another, without consideration. And if such construction should become inevitable, from the language used, constitutional objections might be interposed. But without discussing this topic, we are well satisfied that the act imposes the liability to pay toll upon the owners of timber, for the security and preservation of their property ; and that it does not attach to rafts, which are intended to pass down the river, where the use and security of the boom is not sought or desired. In the second section of the act, it is expressly enjoined upon the corporation so to construct the boom, as to admit the passage of rafts and boats.

If the defendant was not entitled to boomage, it is, secondly, contended that the payment, being voluntary, cannot be reclaimed. Upon this point, there is not an entire harmony in the decided cases. It is believed, however, that by attending to certain distinctions, which have sometimes not been adverted to, they may be in a great measure reconciled.

It has been often held that money paid with a full knowledge of all the facts, although under a mistake of the law, cannot be recovered back. Thus in cases of insurance, where there has been no fraud, and the party paying is fully apprized of the facts, although under a misapprehension of his legal liability, he can sustain no action for the money thus paid. *Lowrie v. Bourdieu, Doug.* 471, per *Buller J.* ; *Bilbie v. Lumley,* 2 *East,* 469 *; Herbert v. Champion,* 1 *Campb.* 134. The same principle applies, where indorsers of notes of hand or bills of exchange, pay under a mistake of the law, but with a knowledge of the facts. In *Brisbane v. Dacres,* 5 *Taunt.* 144, the captain of a ship of war had paid money to his admiral, in conformity with a usage which had obtained, but to which he was not by law entitled, but he was not permitted to recover it again ; there being nothing against conscience in retaining the money. In that case, *Chambre J.* who dissented from his brethren, does

not accede to the principle that money, paid under a mistake of the law, cannot be recovered.   But *Gibbs J.* says "I think that where a man demands money of another as a matter of right, and that other, with a full knowledge of the facts upon which the demand is founded, has paid a sum, he can never recover back the sum he has so voluntarily paid."   This position is broad enough, to sustain the objection taken by the defendant.   There are other cases where, to avoid or close a suit threatened or commenced, a party voluntarily paying, whatever may be his legal liability, must abide by the adjustment he has made.   *Knibbs v. Hall,* 1 *Esp.* 84 ; *Brown v. M'Kinally, ibid.* 279 ; *Cartwright v. Rowley,* 2 *Esp.* 723.   These cases illustrate and enforce the legal maxim, *volenti non fit injuria.*

But this rule applies where the party has a freedom in the exercise of his will ; and is under no such duress or necessity, as may give his payments the character of having been made upon compulsion,   It has been laid down as a general principle, that an action for money had and received lies for money got through imposition, extortion, or oppression, or an undue advantage taken of the party's situation.   *Moses v. McFarlane,* 2 *Burr.* 1005 ; *Smith v. Bromley,* cited in *Doug.* 696.   In *Astley v. Reynolds,* 2 *Strange,* 916, an action was sustained to recover money, extorted by a pawn broker, for the redemption of plate ; notwithstanding it was objected that the payment was voluntary.   In *Hall v. Schultz,* 4 *Johns.* 240, *Spencer J.* says, this case has been overruled by Lord *Kenyon* in *Knibbs v. Hall.*   There the plaintiff had paid, as he insisted, five guineas more rent than could have been rightfully claimed of him, to avoid a distress which was threatened. Lord *Kenyon* held this to be a voluntary payment, and not upon compulsion ; as the party might have protected himself from a wrongful distress by replevin. His lordship does not advert to the case of *Astley v. Reynolds* ; and subsequently, in *Cartwright v. Rowley* before cited, he refers with approbation to an action within his recollection, for money had and received, brought against the steward of a manor, to recover money paid for producing at a trial some deeds and court rolls, for which he had charged extravagantly.   It was urged that the payment was voluntary ; but it appearing that the party could not do without the

deeds, and that the money was paid through the urgency of the case, the action was sustained. Had the distress, threatened in *Knibbs v. Hall*, been actually made, money paid to relieve the goods, could not have been recovered in *assumpsit*, upon a principle which will be subsequently noticed.

*Hall v. Schultz*, cited by the counsel for the defendant, was commented upon in *Gilpatrick v. Sayward*, 5 *Greenl.* 465. Neither of these actions could be sustained without a violation of the statute of frauds ; and upon this ground they were defeated.

In *Stevenson v. Mortimer*, *Cowper*, 805, the plaintiff recovered, in an action for money had and received, an excess of fees by him paid to a custom house officer, to obtain a document he was under the necessity of procuring.

In *Ripley v. Gelston*, 9 *Johns.* 201, the plaintiff recovered in *assumpsit* of the collector of *New York*, money illegally claimed by him as tonnage and light money ; and which the plaintiff paid to obtain a clearance of his vessel. In *Clinton v. Strong*, 9 *Johns.* 370, money was reclaimed, which had been wrongfully exacted by the clerk of the district court, for the redelivery of property which had been seized. In the foregoing cases, the payments were not deemed voluntary, but extorted and compulsory.

It may be insisted that trespass or replevin would have been more appropriate remedies for the plaintiff. Either might doubtless have been maintained ; and where they are specific remedies, provided by law for a peculiar class of injuries, *assumpsit* cannot be substituted. It was upon this ground that *Lindon v. Hooper*, *Cowper*, 414, was decided. Cattle damage feasant had been wrongfully distrained, money had been paid for their liberation, and an action for money had and received brought to recover it. The action did not prevail. The court place their opinion expressly on the nature of the remedy by distress, which they say is singular, and depends upon a peculiar system of strict positive law. That the distrainor has a certain course prescribed to him, which he must take care formally to pursue ; and that the law has provided two precise remedies for the owner of the cattle, which may happen to be wrongfully distrained, replevin and, after paying the sum claimed, trespass, in

which such payment must be specially averred and set forth as an aggravation of the trespass. Then are to follow pleadings, which put directly in issue the validity of the distress. From a case of this peculiar character, decided upon this special ground, no general principle can be extracted which can govern cases, where the law of distress does not apply.

*Irving v. Wilson,* 4 *D. & E.* 485, is a case strongly resembling the one, now before the court. A revenue officer had seized goods, not liable to seizure, but demanded money for their release, which the owner paid. This was recovered back in an action for money had and received. It was held to be a payment not voluntary, but by coercion, the defendant having the plaintiff in his power, by stopping his goods. It does not appear to have occurred to the counsel or the court that it was a case which was affected by the decision in *Lindon v. Hooper.*

Trespass would have been an appropriate remedy for the unlawful seizure; but after payment, *assumpsit* was also appropriate. The money was extorted. The payment was not voluntary in any fair sense of that term; and the defendant had no just title to retain it. If money is voluntarily paid to close a transaction, without duress either of the person or goods, the legal maxim, *volenti non fit injuria,* may be allowed to operate. It would be a perversion of the maxim to apply it for the benefit of a party, who had added extortion to unjustifiable force and violence.

The party injured often finds a convenience, in being allowed to select one of several concurrent remedies. In the case under consideration, replevin would have restored the property unlawfully seized. But to procure a writ, and an officer to serve it, would have occasioned delay, which might have subjected the plaintiff to greater loss than the payment of the money demanded. Besides, he must have given a bond to the officer to prosecute his suit; and he might meet with difficulty in obtaining sufficient sureties. Had he brought trespass, several months might have elapsed, before he could have obtained a final decision; and this delay might have been attended with serious inconvenience. By the course pursued, these difficulties were avoided. Nor is the defendant placed by it

in any worse situation. He has been permitted to urge in his defence any claim of right under the corporation, and he is liable to pay only the money actually received by him ; the plaintiff waiving, by the form of the action, damages for the illegal seizure. We perceive no objection in principle to the form of the action ; nor do we find it unsupported by precedent and authority.

<i>Exceptions overruled.</i>