EDITH BRINKMANN, ET ALS., PLAINTIFFS-APPELLANTS, v. URBAN REALTY CO., INC., TEANECK GARDENS, INC., SIDNEY SARNER, RALPH J. SOLOW AND GEORGE I. MARCUS, DEFENDANTS-RESPONDENTS, AND GEORGE P. POPE, ET ALS., PLAINTIFFS-APPELLANTS, v. URBAN REALTY CO., INC., TEANECK GARDENS, INC., SIDNEY SARNER, RALPH J. SOLOW AND GEORGE I. MARCUS, DEFENDANTS-RESPONDENTS.

Argued May 19, 1952—Decided June 16, 1952.

*Mr. James A. Major* argued the cause for the appellants (*Mr. Warren Dixon, Jr.,* attorney).

*Mr. Waller D. Van Riper* argued the cause for the respondents.

The opinion of the court was delivered by

JACOBS, J. The Appellate Division in *Brinkmann v. Urban Realty Co., Inc.*, 15 *N. J. Super.* 354 (1951) affirmed the Law Division's dismissal of the plaintiffs' action at the close of their case and this court granted certification pursuant to application under *Rule* 1:5–2.

The defendant and mortgagor, Teaneck Gardens, Inc., constructed apartments which were financed by a mortgage insured under the National Housing Act (12 *U. S. C. A.*, § 1701). Regulations duly promulgated by the Federal Housing Administrator pursuant to the act provided that the mortgagor shall make no charges in excess of maximum rentals set forth in a schedule filed with and approved by the Administrator. On July 27, 1948, a schedule setting forth the mortgagor defendant's maximum rentals was approved by the Administrator. In accordance with the Administrator's requirements the defendant's certificate of incorporation contained an express provision that the said defendant shall not, without prior approval of the Federal Housing Administration, as holder of a majority of the defendant's preferred stock, permit the occupancy of any of its dwelling accommodations "except at or below the rents fixed by the schedule of rentals."

The plaintiffs are tenants who entered into leases in 1948 with the said defendant at the maximum rentals provided in the schedule. In addition, however, they paid "commissions" to the defendant Urban Realty Co., Inc., as exclusive rental agent for Teaneck Gardens, Inc. The plaintiffs instituted their action in the Law Division naming Teaneck, Urban and three individuals as defendants and seeking recovery of the commissions paid by them. The plaintiffs' claim as appears from their complaint and the pretrial order was that the defendants had conspired to evade the maximum rentals approved by the Administrator through their so-called commission device; that Urban was not a *bona fide* independent renting agency but was a "corporate front" used by the defendants as a means of exacting more

than the permitted maximum rentals; and that the commissions paid to Urban were not retained by it but were disbursed amongst the defendants. *Cf. De Lorenzo v. City of Hackensack,* 9 *N. J.* 379 (1952); *Houston Petroleum Co. v. Automotive Products Credit Association,* 9 *N. J.* 122, 130 (1952). The defense as appears from the defendants' answer and the pretrial order was that there was no conspiracy; that Urban was not a "front" but was a *bona fide* independent renting agency; and that Urban properly received and retained the commissions paid to it, as renting agent, by the plaintiffs.

At the trial the plaintiffs introduced evidence in support of their claim; without reviewing it in detail we are satisfied that, considered in the light most favorable to the plantiffs (*Dobrow v. Hertz,* 125 *N. J. L.* 347, 348 (*E. & A.* 1940)), it was sufficient to withstand any motion for dismissal grounded upon lack of proof. At the close of the plaintiffs' case the defendants moved for dismissal on the ground that even if there were charges in excess of the maximum rentals set forth in the schedule the tenants would, as a matter of law, have no standing to seek recovery of the excess paid. The Law Division agreed with this position and granted the motion. See 15 *N. J. Super.* 358. On appeal, the Appellate Division expressed its opinion that the plaintiffs "with reason, say that the proofs depict the defendants as employing the 'commission' device with deliberate intent to circumvent the provision of the certificate of incorporation of Teaneck Gardens, Inc., and the contractual commitment as to maximum rents made with the Federal agency"; it nevertheless affirmed the dismissal because of its view that the National Housing Act, by affording to the Administrator a method of procedure in the event of the mortgagor's default or violation and omitting any specific provision for a tenant's action in case of overcharge, displayed a congressional intent that no such tenant's action should be permitted.

Although the National Housing Act of 1934 was primarily designed to stimulate building and increase employment (*United States v. Emory*, 314 *U. S.* 423, 430, 62 *S. Ct.* 317, 86 *L. Ed.* 315, 323 (1941)) it had, amongst its significant purposes, the design of benefitting low-income tenants by affording them suitable housing accommodations at reasonable rentals. Thus section 207, in its initial form, provided that the Administrator could insure mortgages of corporations "formed for the purpose of providing housing for persons of low income which are regulated or restricted by law or by the Administrator as to rents, charges, capital structure, rate of return, or methods of operation." This section was later amended to provide that the Administrator could insure mortgages of corporations which, "until the termination of all obligations of the Administrator under such insurance, are regulated or restricted by the Administrator as to rents or sales, charges, capital structure, rate of return, and methods of operation to such extent and in such manner as to provide reasonable rentals to tenants and a reasonable return on the investment." See 12 *U. S. C. A.*, § 1713. Regulations duly issued by the Administrator under section 207, and which we judicially notice (*Carlo v. The Okonite-Callender Cable Co.*, 3 *N. J.* 253, 260 (1949)), prescribe that the mortgagor shall make no charges in excess of the maximum rentals set forth in an approved schedule; they provide that in establishing such maximum rentals consideration should be given to the following factor, among others: "Rental income necessary to provide reasonable return on the investment consistent with providing reasonable rentals to tenants"; and they further provide that the maximum rental shall be the "maximum authorized charge against any tenant for the accommodations offered exclusive of telephone, gas, electric, and refrigeration facilities."

In 1942 the National Housing Act was amended by the addition of section 608 which provided that the Administrator could insure mortgages as therein provided and expressly set forth that the Administrator could require the

"mortgagor to be regulated or restricted as to rents or sales, charges, capital structure, rate of return and methods of operation." See 12 *U. S. C. A.*, § 1743. Regulations duly issued by the Administrator under section 608 provided that the mortgagor shall make no charge in excess of the maximum rentals set forth in an approved schedule filed with the Administrator and that "the established maximum rental shall be the maximum authorized charge against any tenant for the accommodations offered and shall include all services except telephone, gas, electric, and refrigeration facilities." Section 608 expired in 1950 insofar as new insurance risks are concerned and section 207 has since been amended. However, both were in full force when the defendant mortgagor filed its schedule of maximum rentals and they were considered in the lower court's opinion. Before this court the plaintiffs assert and the defendants do not deny that the applicable section is 207; however, on the controlling issue, as we view it, the result would be the same whether section 207 or 608 be the applicable section.

Accepting, as we must for present purposes, the plaintiffs' version of the transaction there was an illegal and unjust exaction of rent in excess of the maximum expressly prescribed by the Administrator's regulations and in violation of the terms embodied therein and in the certificate of incorporation. This exaction resulted in the unjust enrichment of the defendants at the plaintiffs' expense and, special defenses aside, entitles the plaintiffs to restitution under settled equitable principles cognizable in the lower court. *McGregor v. Erie Railway Co.*, 35 *N. J. L.* 89, 112 (*Sup. Ct.* 1871); *Hartford Accident & Indemnity Co. v. Benevento*, 133 *N. J. L.* 315, 319 (*E. & A.* 1945); *Restatement, Restitution*, § 1 (1937). *Cf. Const.* 1947, *Art. VI, Sec. III*, par. 4; *Massari v. Einsiedler*, 6 *N. J.* 303 (1951). See also *Pingree v. Mutual Gas Co.*, 107 *Mich.* 156, 65 *N. W.* 6, 7 (*Sup. Ct.* 1895); *Chase v. Dwinal*, 7 *Maine* 134, 136 (*Sup. Jud. Ct.* 1830). As a special defense the defendants assert that the plaintiffs' payments were voluntary and as such not

recoverable. *Buschbaum v. Barron*, 1 *N. J. Super.* 4, 7 (*App. Div.* 1948); *Mee v. Montclair*, 84 *N. J. L.* 400, 401 (*E. & A.* 1913). If the plaintiffs were aware of all of the true facts and without "compulsion of the circumstances" (*McGregor v. Erie Railway Co., supra*) entered into the transaction, then the doctrine sought to be invoked by the defendants would presumably bar the plaintiffs' recovery. If, however, as presently appears, they were unaware of the true facts or had no practical choice but to participate because of the unavailability of other housing accommodations, then the doctrine would presumably be inapplicable. *Cf. McGregor v. Erie Railway Co., supra; Chase v. Durnal, supra; Ebeling v. Woods*, 175 *F. 2d* 242, 244 (*C. C. A.* 8 1949).

██ The vital question is whether the terms of the National Housing Act expressly or impliedly exclude the tenants' action for restitution of the rental charges exceeding the maximum prescribed by the Administrator's regulations and the certificate of incorporation. The defendants point out that the apartments constructed by Teaneck are not subject to rent control under the Housing and Rent Act of 1947 which contains an express provision for recovery by the tenant of not more than three times the amount of the overcharge. 50 *U. S. C. A., App.* § 1895. That circumstance is not significant since the plaintiffs' action has no relation whatever to the Housing and Rent Act of 1947 and the presence of the express provision therein for treble damages does not suggest that the absence of a similar provision in the National Housing Act is indicative of a congressional intent to deprive tenants of their claim for simple restitution in the event of illegal overcharges thereunder. *Cf. Porter v. Warner Holding Co.*, 328 *U. S.* 395, 401, 66 *S. Ct.* 1086, 90 *L. Ed.* 1332, 1339 (1946). The duty not to overcharge, imposed by the Administrator's regulations and the certificate of incorporation, was a clear one and the omission of express statutory provision for recovery in the event of overcharge does not to us evidence any purpose that recovery by or on

behalf of the tenant, through customary legal and equitable processes and principles, be disabled. See *Texas & N. O. R. Co. v. Brotherhood Ry. & S. S. Clerks,* 281 *U. S.* 548, 569, 50 *S. Ct.* 427, 74 *L. Ed.* 1034, 1045 (1930) where Chief Justice Hughes pointed out that the absence of statutory penalty was not controlling and that "many rights are enforced for which no statutory penalties are provided." *Cf. Weller v. McCormick,* 52 *N. J. L.* 470, 472 (*Sup. Ct.* 1890); *Pirozzi v. Acme Holding Company of Paterson,* 5 *N. J.* 178, 186 (1950). Indeed, denial of such recovery of overcharge would impair substantially the highly important benefit and protection, designedly sought to be conferred upon tenants as a class, in the provision for maximum as distinguished from minimum and specified rentals. *Cf. Fairport P. & E. R. Co. v. Meredith,* 292 *U. S.* 589, 597, 54 *S. Ct.* 826, 78 *L. Ed.* 1446, 1451 (1934). It is urged by the defendants that the language in the National Housing Act to the effect that the Administrator's regulations should continue until the termination of obligations under the insurance discloses an intent to control the premises not for the benefit of tenants but "solely for the benefit of the insurance risk which the Government had assumed." We do not so read it; on the contrary, we consider that while the Government's primary interest may be in its insurance risk and its control expires therewith, so long as its control does continue it is additionally and properly interested in protecting and benefitting low income tenants through the imposition of maximum rentals.

The contention is advanced that the National Housing Act has provided an express remedy in the event of overcharges and that this remedy is exclusive. *United States v. Babcock,* 250 *U. S.* 328, 39 *S. Ct.* 464, 63 *L. Ed.* 1011 (1919); *Evers v. Davis,* 86 *N. J. L.* 196 (*E. & A.* 1914). Nothing in the act refers specifically to the remedy in the event of breach of the duty not to overcharge. However, the Administrator is generally empowered, in order to render his regulations effective, to acquire stock of the mortgagor which attains

majority voting control in the event of default under the mortgage or violation of any provision of the certificate of incorporation or agreement with the Administrator. Assuming that under this power the Administrator could acquire voting control in the event of overcharges and thereafter eliminate further overcharges, there might still be no remedy thereunder available to the tenants with respect to past overcharges. In any event, we readily reject the contention that Congress meant to afford this tenuous statutory remedy as the exclusive one where rental charges in excess of the maximum provided by the regulations have been exacted. See *Porter v. Warner Holding Co., supra; Steele v. Louisville & Nashville Railroad Company*, 323 *U. S.* 192, 207, 65 *S. Ct.* 226, 89 *L. Ed.* 173, 186 (1944). In the *Porter* case the Supreme Court held that the express statutory remedy for treble damages afforded in section 205(*e*) of the Emergency Price Control Act was not exclusive and did not prevent the court from there exercising, without relation to the limitations of section 205(*e*), its power to direct simple restitution of an overcharge, action rightly described by Justice Murphy as "within the highest tradition of a court of equity."

We find nothing whatever in the National Housing Act which precludes courts from entertaining claims based on accepted principles of restitution. The preclusion of such remedy would, as in the instant matter, operate unconscionably in disregard of the maximum rentals and tend to frustrate effective enforcement of beneficient regulations adopted by the Administrator pursuant to clear Congressional authority and policy. It seems to us that proper regard for the interests of justice requires that such result not be reached in the absence of compelling language indicating statutory purpose of withdrawing from courts their customary powers of moulding and adapting traditional remedies to breaches of new duties imposed by law. See *Bowles v. Skaggs*, 151 *F. 2d* 817, 820 (*C. C. A.* 6 1945); *Heinicke v. Parr*, 168 *F. 2d* 194, 197 (*C. C. A.* 6 1948).

Reversed, with costs to abide the event of new trial.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and JACOBS.—6.

*For affirmance*—None.