53 N.J. Super. 582 (1959)
148 A.2d 33
GLORY JENKINS, PLAINTIFF-APPELLANT,
v.
YETTA KAPLAN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 24, 1958.
Decided January 26, 1959.
*584 Before Judges SCHETTINO, HALL and GAULKIN.
Mr. George Rothstein argued the cause for plaintiff-appellant.
Mr. Edward J. Lynch argued the cause for defendant-respondent (Mr. Cyril J. McCauley, attorney).
The opinion of the court was delivered by GAULKIN, J.A.D.
This is an action by a tenant for restitution, on the theory of unjust enrichment, of rents paid to defendant landlord from July 1, 1956 to August 1, 1957 in excess of the lawful maximum fixed by ordinances of Union City adopted under the authority of L. 1956, c. 146; N.J.S. 2A:42-56. The Hudson County District Court entered judgment for defendant, after trial without a jury, and plaintiff appeals.
An earlier phase of this litigation was before this court in Jenkins v. Kaplan, 50 N.J. Super. 274 (App. Div. 1958). In that opinion this court said (at page 282):
"Defendant argues that the complaint should have been dismissed with finality because it does not appear therefrom that the payments by the plaintiff were not voluntary. The law in this regard is clear. The payments were not voluntary if plaintiffs were under compulsion because of unavailability of other housing accommodations. Brinkmann v. Urban Realty Co., Inc., supra (10 N.J. at page 120)."
*585 In the Brinkmann case, the Supreme Court said (10 N.J. 113, at pages 119-120 (emphasis ours)):
"* * * This exaction resulted in the unjust enrichment of the defendants at the plaintiffs' expense and, special defenses aside, entitles the plaintiffs to restitution under settled equitable principles cognizable in the lower court. * * * As a special defense the defendants assert that the plaintiffs' payments were voluntary and as such not recoverable. Buschbaum v. Barron, 1 N.J. Super. 4, 7 (App. Div. 1948); Mee v. Town of Montclair, 84 N.J.L. 400, 401 (E. & A. 1913). If the plaintiffs were aware of all of the true facts and without `compulsion of the circumstances' (McGregor v. Erie Railway Co., supra) entered into the transaction, then the doctrine sought to be invoked by the defendants would presumably bar the plaintiffs' recovery. If, however, as presently appears, they were unaware of the true facts or had no practical choice but to participate because of the unavailability of other housing accommodations, then the doctrine would presumably be inapplicable."
It is therefore the law of this case (United and Globe Rubber Mfg. Co. of Trenton v. Conard, 82 N.J.L. 680 (E. & A. 1912)) that the payments here made "resulted in the unjust enrichment of the defendants at the plaintiffs' expense, and, special defenses aside, entitles the plaintiffs to restitution"; that plaintiff may not recover if she was "aware of all of the true facts and without `compulsion of the circumstances' entered into the transaction"; but if she was "unaware of the true facts or had no practical choice but to [pay] because of the unavailability of other housing accommodations" the payments would not be deemed voluntary.
After the decision in 50 N.J. Super. 274, supra, the case was tried on its merits. At that trial it was stipulated that the payments had been in excess of the maximum allowed by law. Therefore, the only questions before the trial court were whether they were voluntary and, if not, whether there were any other "special defenses" which barred plaintiff's recovery.
Since the testimony was not taken down stenographically, the record has been settled by the trial court pursuant to R.R. 1:6-3; and since the case was tried without a jury, *586 the court filed its findings of fact and conclusions of law pursuant to R.R. 7:16-3.
Plaintiff contends in this appeal that (1) the record shows that the payments were not voluntary, and (2) the trial court erred (to quote appellant's brief) "in basing its judgment on general equitable principles rather than on legal grounds."
From the record we learn that in 1949 plaintiff and her husband moved into the apartment in question. There is no proof that they were under any compulsion to move from the premises which they had theretofore occupied. In fact, they sought the apartment in question because it was larger and had more privacy. Mr. Jenkins agreed to pay $52.50 per month for the apartment. Called as a witness by defendant he testified that he had known that the previous tenant had paid only $45 per month, but he never knew that $45 was the "proper registered rent."
In 1952 Mr. Jenkins left plaintiff and their child, but until December of that year he continued to pay the rent. However, in December 1952 he was ordered to pay his wife a sum weekly for support and from that time on she paid the rent herself.
Soon after the separation plaintiff's mother came to live with her. In August 1953, while her mother was still living with her, plaintiff asked the defendant for permission to have her brother move in also. Plaintiff testified that defendant refused to give such permission unless she paid $10 per month for rent, or $62.50; and that, consequently, she agreed to pay that sum. There is no proof that there was any "compulsion of circumstances" upon her which made it necessary for her to have her brother move in. Defendant's witnesses, on the other hand, testified that plaintiff had not asked for such permission, but gratuitously had paid $10 per month more because her brother had already moved in, and because Mr. Kaplan was ill and in the hospital. (Mr. Kaplan died before the institution of this action.)
The trial court appears to have found that the plaintiff did pay the $10 increase, albeit willingly, in exchange for *587 the permission which she did ask for and which defendant did grant. The court said, in its findings of fact and conclusions of law (emphasis ours):
"(f) That the agreement to increase the rent from $52.50 per month to $62.50 per month * * * when plaintiff's brother, an adult, not a member of plaintiff's immediate family, was granted permission to reside and use the floor as part of the plaintiff's household, was in all respects voluntary in nature and not actuated by any fraud or subterfuge of existing rent laws on the part of the defendant or her deceased husband. * * * The necessity, if any, did not pertain to a member of plaintiff's immediate family. The defendant, or Mr. Kaplan (deceased husband) was not legally enjoined or precluded from denying plaintiff permission to allow her brother (an adult) to make use of and reside in the premises of the plaintiff's household."
There is nothing in the record to support the court's finding that defendant was not "precluded from denying plaintiff permission to allow her brother * * * to reside in the premises of the plaintiff's household." There is no evidence in the record of the terms of the letting, other than the rent; nothing, therefore, to indicate that the landlord did have the right to prevent plaintiff's brother from living in the apartment. In the absence of contractual restrictions, a tenant may sublet in whole or in part. 51 C.J.S. Landlord and Tenant § 31, p. 538; S.M. Braunstein, Inc. v. McGrory Stores Corp., 93 N.J. Eq. 419, 420 (E. & A. 1922).
It is true that the ordinances, reflecting the underlying statute, permitted an increase when "The tenant has increased the number of sub-tenants or roomers in the dwelling unit rented from the landlord." However, such an increase was invalid unless and until it was approved by the City Rent Control Director "upon an application by the landlord, on notice to the tenant, and upon a hearing * * *" We hold, therefore, that it was illegal for the landlord to take the $10 additional rent, even as compensation for her brother's residence in the premises.
We conclude also that these payments, which totalled an excess of $17.50 per month over and above the registered *588 rental, were not voluntary. To be voluntary, payments must be not only free from compulsion, but in addition they must be made by one who knows that he is under no obligation to pay. That is one of the "facts" of which the tenant must be "aware." Brinkmann v. Urban Realty Co., supra, 10 N.J. at page 120. "Voluntary" presupposes choice, and one makes no choice when one does not know he has a choice. In the case at bar, plaintiff testified she did not know that the legal rent was only $45 a month. Indeed, her husband, a hostile witness called by defendant, said he had not known that either. Nor is there any evidence that she knew that, without the approval of the Director, she was under no obligation to pay $10 a month for the privilege of housing her brother. The fair inference from the testimony is that she did not know this. In this connection it may be noted that plaintiff testified that when her mother moved out of the premises in 1955, she asked defendant for a reduction in the rent, which defendant refused even though the premises were then occupied by the same number of people as in 1952, when she and her husband first rented the apartment.
Since plaintiff had no knowledge that the payments were illegal under the rent control ordinances, the question whether she was under "compulsion of circumstances" to pay the additional $10 per month for the occupancy by her brother becomes immaterial. For the same reason, it is not necessary to decide upon whom the burden fell to prove that when her husband left her she was or was not under "compulsion of circumstances" to remain in the apartment and pay $52.50 rent. Therefore, plaintiff was entitled to recover the payments, unless the trial court was justified in entering judgment for the other reasons set forth in its findings of fact and conclusions of law.
Those reasons the trial court set forth as follows:
"(g) The plaintiff benefitted by her voluntary agreement of August 1953 to pay the increase, by reason of defendant's permission, in the following manner:
*589 1. She received additional income in the nature of board from her brother, (an adult) at the rate of $10.00 per week.
2. The premises were subject to greater use and liability not originally contemplated by the parties.
3. Defendant could not now be returned to status quo.

* * * * * * * *
(i) The court took judicial notice of the applicable Federal and N.J. State Rent Control Laws and Regulations and concluded that by reason thereof defendant ordinarily would be entitled to 20% increase in rent on July 31, 1951 under the Federal Statutes and an additional 20% under the N.J. State Rent Laws and in addition such other available increases for increase of occupants or service as provided by Law and its rules and regulations. See U.S. Defense Production Act 1950 as amended July 31, 1951 Section 203 (o) [50 U.S.C.A. Appendix, § 1894 (o)] and State Rent Control Act of 1953 Chapter 216 of the Laws of 1953 amendatory thereto in supplementary thereof [N.J.S.A. 2A:42-14 et seq.], and State Rent Control Act as embraced in Chapter 146, Section 11, Laws of 1956 [N.J.S.A. 2A:42-66] and all rules and regulations enacted pursuant to the aforesaid statutes.
(j) Considering the increases of rent available to the landlord by virtue of the Statutes, and etc., referred above, the defendant was not in fact unjustly enriched.
(k) That the plaintiff's claim for overcharge under the facts is technical in nature and not substantiated in fact upon any equitable principles of restitution."
These reasons do not appear to us to be sufficient to constitute a defense. As we have said, the design of the statute and the ordinances was that no increase of rent be received by the landlord unless approved by the Director and registered with him. It seems to us that it would defeat the "highly important benefit and protection, designedly sought to be conferred upon tenants as a class" (Brinkmann, supra, 10 N.J. at page 121) by the statute, if the landlord were permitted to retain that rent which a court believed the landlord would have been permitted to charge had he obtained the permission of the Director. Therefore (g), (i), (j) and (k), above, should not have been accepted as a defense by the trial court.
It may be true that "defendant could not now be returned to status quo," but that is defendant's fault. The statute and the ordinances put the burden of compliance with the approval and registration provisions upon the landlord. *590 It was his failure to comply that, unbeknownst to the plaintiff, put him in his present position.
Nor is it material that plaintiff received $10 per week from her brother for board and lodging. By the present value of the dollar that could not have been much of a benefit to plaintiff, but even if it were it would not relieve the landlord of his obligation to comply with the law, under the circumstances of this case.
For the foregoing reasons the judgment is reversed, and judgment is entered in favor of the plaintiff in the sum of $227.50, together with interest from the dates of payment, and costs.