ARTHUR EISELE, Plaintiff and Appellee, *v.* CARMEN ORCASI-TAS, Defendant and Appellant.

No. 564. Decided January 8, 1962.

*Jorge Benítez Gautier* for appellant. *José T. Marrero Rivera* for appellee.

Division composed of Mr. Justice Hernández Matos, as Acting Chief Judge of Division, Mr. Justice Santana Becerra and Mr. Justice Blanco Lugo.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The Economic Stabilization Administration ordered the appellant Carmen Orcasitas to reimburse the appellee Eisele the sum of $528 for rental overcharge. Upon her refusal to do so, the tenant filed a complaint in the Superior Court on December 22, 1956, claiming $1,584, that is, three times the aforesaid amount.

In a direct petition for review, Case CS 56-4128, the landlady challenged the order of reimbursement before the Superior Court and the San Juan Part rendered judgment on October 3, 1957 setting aside said order. In the certiorari proceeding 2420 interposed by Eisele, this Court vacated the aforesaid judgment on June 28, 1960, as a result of our ruling in *Peñagaricano* v. *Superior Court; Nadal, Int.,* 81 P.R.R. 849.

The present case was submitted to the trial court with the following facts stipulated by the parties:

During 24 months, between August 31, 1953 and August 31, 1955, the appellant collected from the tenant an overcharge of $22 monthly, amounting to $528. The authorized rental was $47 and she was charging $69. During 9 months following August 31, 1955 the tenant only deposited $40, $7 less than the legal rental, that is, $63. In May 1956 the Administrator authorized a rental of $68.50 which was paid. Since January 23, 1956 the tenant had filed a complaint before the Administrator and on April 14 he made a direct request of reimbursement to the landlady. On August 23, 1956, the Administrator issued the order of reimbursement of $528. The tenant vacated the premises in July 1957 owing $188.10.

The trial court declared that the action for treble damages had been extinguished. This problem is not before us in this appeal taken by the landlady. It proceeded, however, to render judgment against her for $277.90 for the single reimbursement of $528, less $188.10, the amount owed by the tenant upon vacating and the $63 left unpaid from the original rental.[1]

We shall begin by determining the nature of the judgment. It is not a question of treble nor single *"damages."*

---

[1] It should have been for $276.90. Although the complaint was for treble damages, the facts having been stipulated and additional evidence not being necessary to resolve what respects the rights of the tenant to a single reimbursement, from the adjective viewpoint, the court acted appropriately. Rule 44.3 of the Rules of Civil Procedure (1958).

This is a case of *reimbursement* or *restitution* to the tenant of money charged him in violation of the law, and which lawfully should have always belonged to him.

The problem for decision is whether or not the tenant may obtain a judicial judgment of restitution for the aforementioned amount within the provisions of the Reasonable Rents Act, and ultimately, the problem would be whether or not he needs of the mechanics of that law to enforce this right judicially.

The question at issue is an inevitable sequel to the decision of Nadal. We purposely left this question undecided in that case, because it dealt with the direct review of an order of the Administrator, and not with a judicial action of the tenant. The question reappeared, although untimely, in *Banco Popular* v. *Superior Court; Domínguez, Int.*, 82 P.R.R. 236. We also left it expressly undecided, for procedural reasons. Now we must decide it.[2]

On April 25, 1946 our Reasonable Rents Act was approved, Act No. 464, 17 L.P.R.A. §§ 181–218. Following the federal pattern already established in § 205 (e) of the Emergency Price Control Act of 1942, 56 Stat. 23,[3] which granted the tenant, as full compensation in cases of overcharge, *liquidated damages* for three times the overcharge collected plus the costs and attorney's fees in a judicial action which the tenant or the United States should interpose within the year after the violation or overcharge, our Legislator made similar provisions in § 8 of Act No. 464, as originally enacted.[4]

---

[2] The statutory and doctrinal antecedent of the problem was set forth by the writer of the opinion in the decision which he delivered for the Court in *Nadal*. We shall proceed from this already familiar ground so as to avoid unnecessary repetition.

[3] Section 205 of the Federal Housing and Rent Act of 1947, 50 U.S.C.A., App., § 1895, 61 Stat. 193.

[4] "Section 8.—If the landlord charges or receives a rent higher than the basic rent or the reasonable rent fixed by the Administrator, the tenant may institute a civil action against the landlord for damages, either for

Nevertheless, without Congress having made any change in this respect to the federal statute, and when our own statute had only been in effect a few months, on March 21, 1947, Senator Géigel Polanco, author of the project of Act No. 464 introduced Senate Bill No. 894, which became Act No. 421 of May 14, 1947, which Act substantially altered the original § 8 and the public policy stated therein.

What could have been the cause for this sudden change of the legislative norm? The history of Act No. 421 of 1947, as we pointed out in *Nadal* (n. 6), does not give any reason.

An incident occurred, however, which throws sufficient light and offers a logical explanation. On June 3, 1946, thirty-nine days after Act No. 464 was approved, the Supreme Court of the United States delivered its decision in *Porter* v. *Warner Co.*, 328 U.S. 395. Pursuant to the provisions of § 205 (*a*) of the Emergency Price Control Act of 1942,[5] the Federal Administrator filed a suit for injunction to restrain the landlord from collecting overcharged rents in violation of the law. Later, he amended the complaint in injunction to seek in addition a decree requiring respondent to return to the tenants the amounts collected in excess, except to any person who might have commenced action under § 205(*e*) [§ 205 of 1947; § 8 original Act No. 464.] The district court granted the injunction but declined to order restitution. We have already stated in *Nadal* the reasons of public policy adduced by the Supreme Court in the application of these statutes upon deciding that the restitution to the tenants, within that suit of injunction filed by the Ad-

the amount of fifty (50) dollars or for three times the amount by which the rent paid exceeds the applicable rent, whichever amount is higher, plus the costs and attorney's fees of the proceeding. The claim may be instituted only within the year following the date on which the rent was paid; *Provided*, that such claims shall be limited to the rent earned and paid subsequent to the date of the taking effect of this Act."

[5] Section 206 Housing and Rent Act of 1947, 50 U.S.C.A., App., § 1896(*b*), 61 Stat. 193.

ministrator, of the excess collected was proper. The Court stated finally—328 U.S. at 402, as copied from *Nadal*, 81 P.R.R. at 859—the following:

"Restitution, which lies within that equitable jurisdiction, is consistent with and differs greatly from the damages and penalties which may be awarded under § 205 (e) ... [Citation.] When the Administrator seeks *restitution* ... he does not request the court to award *statutory damages* to the purchaser or tenant or to pay to such person part of the penalties which go to the United States Treasury in a suit by the Administrator under § 205 (e). Rather he asks the court *to act in the public interest by restoring the status quo* and ordering the return of that which rightfully belongs to the purchaser or tenant." (Italics ours.)

In *United States* v. *Moore*, 340 U.S. 616 (1951), the *Porter* decision was ratified and its scope was enlarged. Decided under the Housing and Rent Act of 1947, the Federal Administrator filed a similar suit of injunction, demanded *statutory damages* for three times, plus the restitution of the overcharge to the tenant. The injunction did not lie, because in the interim the rent control ceased in that locality. The district court allowed *statutory damages*, and ordered the *restitution* of all overcharges received. The Court of Appeals was of the opinion that the statutory damages lay, but since the injunction did not lie, it understood that there was no ground for ordering restitution. On reversal, the Supreme Court held that the aforesaid order of *restitution* could be issued by the district court in its role as court of *equity*, as an *order*, under § 206 (b) (1947) to enforce compliance with the law for the period during which the overcharges were collected. In *Nadal* we compiled and commented decisions to the effect that the expiration period of one-year limitation provision fixed for the action of *treble* statutory *damages* was not applicable to the restitution or reimbursement of the overcharge. It seems fitting to clarify as we also did in *Nadal*, that in these cases the power to order judicially a

reimbursement was recognized in actions which were interposed by the Administrator, who invoked the equitable jurisdiction of the federal courts. It is well to remember, also, that the state decisions which we cited that did not permit the tenant to file such action, applied the federal law itself, and not the local statutes which could have disposed of the matter in a different way.[6]

The quite convincing reasonings of the Supreme Court which were set forth in the *Porter* decision as to the public policies underlying the restitution of the overcharge for the tenant's benefit as an efficient means to enforce and make effective the law on price control, even when the law itself did not grant in express terms a judicial action in that sense, undoubtedly induced the amendment of May 14, 1947 to § 8 of Act No. 464. Probably, legislative action was used in this case, because since our courts are not courts of equity in the fashion of the federal courts, the end could not be attained in the manner sanctioned in *Porter*, and later in *Moore*. It is conceivable that the application of the local legislation would call for norms of effectiveness similar to those of the federal legislation, because the latter continued to prevail here in regard to housing—§ 4 of Act No. 464— yet, on the other hand, the local law covered units of rent not included in the Congress legislation.[7]

█ In fact, in drafting the declaration of policy of Act No. 464, our Legislative Assembly stated that the purpose

---

[6]Nevertheless, Massachusetts acknowledged locally a judicial action to the tenant to obtain restitution of the overcharge—*Shread* v. *Breton,* 132 N.E.2d 177—under the Federal Housing Act itself. See the illustrative opinion of New Jersey—*Brinkmann* v. *Urban Realty Co.,* 89 A.2d 394— where in a similar situation which arose under the National Housing Act which regulated the rent in dwellings financed thereunder, and which afforded relief to the tenant in cases of overcharge, the right of the tenant to claim judicially the restitution or reimbursement of the excess was acknowledged under the principle of unjust enrichment. *Cf. Jenkins* v. *Kaplan,* 148 A.2d 33.

[7] Federal regulation on rent control was effective here until July 31, 1953.

of the Act was to implement the provisions of the Emergency Price Control Act of 1942, concerning rents "as applied to Puerto Rico, *with the same policies* and the *same purpose* of preventing speculation in rents, in such aspects of the rental problem as are of public interest in Puerto Rico, and are not covered by the Federal Act, such as the lease of houses and buildings used for businesses and commercial and industrial purposes." (Italics ours.) Thus, immediately after the *Porter* decision, the former § 8 was amended on May 14, 1947, to provide in the first place (a) that the landlord who charges or receives from his tenant an amount in excess of the maximum rent fixed by the Administrator, *shall return said excess* to his tenant within 30 days following the request therefor by the tenant or the Administrator; and (b) that in those cases where the Administrator reduces the rent including reimbursement to the tenant, the landlord shall make such reimbursement within the 30 days following the date of the order for reimbursement. It should be noted with respect to the obligation of the landlord to return the overcharge, that no particular limitation period was fixed. It is significant that a previous order from the Administrator was not necessarily required either for the tenant to claim reimbursement from the landlord. It is also significant that in cases in which the Administrator sought action for liquidated damages, he was authorized to collect administratively the sum involved therein, pay the tenant the *single reimbursement*, transferring only the difference to the Public Treasury.

It is true that § 8 did not expressly provide that the tenant could initiate a judicial action to make the overcharge effective, if the landlord did not do so voluntarily, nor was any provision made with reference to statutory damages. Neither did the federal legislation contain a similar provision, and much less made any reference whatsoever to restitution or reimbursement. Nevertheless, we have seen how the aforesaid legislation was judicially interpreted to permit a judg-

ment ordering the restitution of the overcharge paid as a means of enforcing the congressional public policy.

Unlike the federal law, our legislation expressly recognizes since the amendment of 1947, the right of a tenant to recover from his landlord the overcharge collected in violation of the law. He was granted this substantive right and the same should not be defeated because the lawmaker did not expressly state that he could appeal to a court of justice to enforce it. *Ubi jus ibi remedium.* We already stated in *Nadal* that the judicial action for treble damages is of a punitive nature, as a means for discouraging violations of the law by way of pecuniary punishment. But said action was limited to the overcharge paid during the year immediately preceding the filing of the complaint, as a means also of avoiding the unjust enrichment of the tenant by permitting for an indefinite length of time, the violation of the law. The right to recover merely what was taken from him in violation of the law can not be in justice less doubtful nor be at greater disadvantage than the right, by way of penalty, to obtain treble damages. Because the tenant loses his action for treble damages by way of prescription, as was determined by the court in this case, which is something most likely to happen in view of the complexity of the regulations and because it is not always acknowledged in time and with full clearness whether an overcharge was being paid, is no reason why he should not be able to enforce his right to recover what rightfully belongs to him, since he should have never paid it.

We are fully in agreement with the opinion of the trial court. Having considered the public policy underlying the Reasonable Rents Act, so as to give it due effectiveness, and in pursuit of its purposes, it is proper to acknowledge the power of the courts to render judgment ordering the payment of the amount of a reimbursement of overcharges, which reimbursement is recognized by law to the tenant. It

can be considered as an ordinary action of debt or restitution of what was unduly paid, or to avoid unjust and illegal enrichment. The purposes of the Act are best served if the landlord does not retain the fruits derived from a violation thereof.

We should clarify, so as to avoid confusion, that the foregoing should not be understood in the sense that the courts of justice have the power at first instance to determine, by way of a restitution, what is the reasonable rent to be charged, a function which in the first instance exclusively concerns the Administrator. The request for restitution should proceed from an order by the Administrator to that effect, or from a rent already fixed by the Administrator, or by the Act itself. Neither shall the tenant be able to obtain any reimbursement of overcharge that would serve him as a basis to obtain the liquidated statutory treble damages.

The judgment appealed from shall be affirmed in what respects this appeal.