OPINION OF THE COURT
Elizabeth W. Pine, J.
Defendant Rochester General Hospital (hospital), the only defendant appearing on this application, seeks "an order, pursuant to Sections 3211[a](7) and 3017(c) of the Civil Practice Law and Rules, dismissing the third and fifth causes of action on the ground that they fail to state a cause of action”.
Plaintiffs’ complaint contains five separately pleaded claims: first, against all the defendants, alleging medical malpractice; second, against defendant doctor only, alleging that he operated without informed consent; third, against defendant doctor only, alleging breach of an express warranty; fourth, against defendant hospital only, alleging malpractice; and fifth, against all the defendants, alleging a derivative claim on behalf of plaintiff husband.
While denominated a motion to dismiss, defendant’s instant application consists of two distinct components: a substantive motion to dismiss certain causes of action for failure to state a claim (CPLR 3211, subd [a], par 7); and a procedural motion addressed to the form of plaintiffs’ pleading (see CPLR 3017, *1064 subd [c]). The substantive and procedural aspects of the instant motion are treated separately[1] herein.
I. the motion to dismiss (CPLR 3211, subd [a], par 7)
A. THE THIRD CAUSE OF ACTION
Since the third cause of action is pleaded solely against defendant doctor,[2] defendant hospital lacks standing to move that it be dismissed for failure to state a claim against it.
Even had defendant doctor so moved, the allegations in the third (contract) claim, if assumed true — as they must be on a motion to dismiss — do appear to state a cause of action separate and distinguishable from plaintiffs’ malpractice claim against defendant doctor: "The legal duty, the breach of which is covered, is wholly different. If a doctor makes a contract to effect a cure and fails to do so, he is liable for breach of contract even though he used the highest possible professional skill.” (Safian v Aetna Life Ins. Co., 260 App Div 765, 768, affd 286 NY 649, quoted in Robins v Finestone, 308 NY 543, 547; see, also, Simcuski v Saeli, 44 NY2d 442, recognizing claim for fraud distinct from claim for malpractice; Ann. 43 ALR3d 1221, Recovery Against Physician on Basis of Breach of Contract to Achieve Particular Result or Cure.)
B. THE FIFTH CAUSE OF ACTION
Defendant hospital further moves to dismiss plaintiff husband’s derivative claim, the fifth cause of action. As Jacob Fuchsberg (now Judge Fuchsberg) observed in his treatise on damages, "[w]here a married woman has been injured by the actionable fault of the defendant her husband is entitled to recover the damages sustained by him through invasion of his interests in the marriage relationship” which damages can be based upon loss of society, as well as upon loss of services or of consortium. (Fuchsberg, Encyclopedia NY Law, Damages, § 1219.)
*1065 Plaintiff husband’s fifth cause of action sufficiently states of claim upon which relief may be granted, and the motion to dismiss is denied. It is unnecessary to decide whether plaintiff husband can succeed in his derivative claim to the extent that it is premised upon plaintiff wife’s third claim, since the remaining claims interposed by his wife are a sufficient predicate for it (see, e.g., Fuchsberg, Encyclopedia NY Law, Damages, § 1207; see, generally, Schunk v Brown, 55 AD2d 831).
II. THE AD DAMNUM ISSUE (CPLR 3017, Subd [c])
Defendant hospital contends that the third and fifth causes of action (in connection with which specific sums are demanded as damages) should be dismissed because they violate the mandates of CPLR 3017 (subd [c]). So drastic a remedy as this appears unauthorized by CPLR 3017 (subd [c]). Motions for relief pursuant to CPLR 3017 (subd [c]) — like those for a more definite statement (CPLR 3024, subd [a]; see 3 Weinstein-Korn-Miller, NY Civ Prac, par 3024.07, n 29) — are designed to correct pleadings,[3] rather than to dismiss them.
Though the measure of damages is different, the damages claimed in plaintiff wife’s breach of contract claim and in plaintiff husband’s derivative claim are closely tied to the very injury out of which plaintiff wife’s malpractice claim arises. If plaintiffs were permitted to plead the amount of damages they demand in connection with these claims, the effect would be essentially the same as that of pleading specific money damages on the malpractice claim itself, and the purpose of CPLR 3017 (subd [c]) would be defeated.
The language of CPLR 3017 (subd [c]) itself suggests no such inconsistency was intended: "In an action for medical malpractice, the complaint * * * shall not state the amount of *1066 damages to which the pleader deems himself entitled” (emphasis added). The Legislature seems to have purposefully selected the terms italicized; the section is not worded in terms of a plaintiffs "claim” — as plaintiff would have this court interpret it — but rather, in terms of a complaint in an action. The Governor’s approval memorandum prepared in connection with this amendment is similarly expansive, the stated purpose for the amendment being to "prohibit the use of the ad damnum clause (i.e. the demand for a specific amount of damages) in medical malpractice actions” (NY Legis Ann, 1976, p 421). Similarly, the McGill Commission report — which provided the impetus for this bill — also did not restrict its recommendation to individual claims or causes of action:
"5. Ad Damnum Clauses
"The ad damnum clause is the final paragraph in plaintiffs complaint and has been considered an essential part of his pleading. In fact, the clause serves very little legal purpose other than to set the upper limit of recovery. Because the plaintiff is free to assert any amount of damage he chooses, ad damnum clauses in medical malpractice actions have frequently alleged damages in very high amounts. Because such figures are often picked up by the news media and form the basis for adverse publicity, ad damnum clauses have become a special irritant to the medical profession. The fact that a case in which a high figure was asserted in the ad damnum clause is subsequently settled for a relatively low amount or ends with a judgment for the defendant is not commonly given equal media coverage.
"Though the elimination of the ad damnum clause will not reduce insurance premiums, the Panel recommends the abolition of ad damnum clauses in medical malpractice actions by amendment of Section 3017 of the Civil Practice Law and Rules to require that the complaint include a demand for 'reasonable damages’ without specifying the amount.” (Réport of the Special Advisory Panel on Medical Malpractice, State of New York, Jan., 1976, p 45; emphasis in original.)
If, in the instant case,[4] plaintiff wife were held entitled to
*1067 preserve, in the complaint, her demand for $1,500,000 in damages in connection with her third claim for relief — and plaintiff husband, his demand for $1,000,000 in connection with his derivative claim — the impact of the ad damnum clause upon the jury (see, e.g., Rice v Ninacs, 34 AD2d 388) and others reading it, would be no different than if CPLR 3017 (subd [c]) had never been enacted.
Defendant is entitled to an order striking so much of the ad damnum clause in plaintiffs’ complaint as sets forth the damages claimed by plaintiff wife on her third cause of action,[5] and the damages claimed by plaintiff husband on his derivative claim. Plaintiffs shall serve an amended pleading consistent herewith within 10 days (cf. CPLR 3024, subd [c]) after service of the order based on this memorandum together with notice of entry.

. As Professor Siegel noted even before the 1976 amendment to CPLR 3017, "[t]he relief clause * * * does not figure in a test of the pleading’s sufficiency. Whether or not a pleading is sufficient for purposes of a dismissal motion under CPLR 3211(a)(7) based on failure to state a cause of action is measured by the body of the complaint and not by its wherefore clause.” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3017:2, at p 112.)

. This not only appears from the face of the pleading, but is acknowledged in the memorandum of law submitted by defendant hospital.

. It is unclear whether CPLR 3017 (subd [c]) was intended to authorize a new form of corrective motion, or merely to specify certain items which a party may move to strike as prejudicial, by an ordinary corrective motion pursuant to CPLR 3024 (subd [b]). The courts have grappled with a similar problem in applying CPLR 3014: the Second Department treats a motion to separately state and number (CPLR 3014) as distinct from a CPLR 3024 corrective motion (see Consolidated Airborne Systems v Silverman, 23 AD2d 695), while the First and Third Departments treat such a motion merely as a CPLR 3024 corrective motion (see Alexander v Kiviranna, 52 AD2d 982; Weicker v Weicker, 26 AD2d 39).
The court notes but finds it unnecessary to resolve this procedural issue, since it is of practical significance only with respect to whether the order determining this motion is appealable only by permission (CPLR 5701, subd [b], par 3) or as of right (CPLR 5701, subd [a], par 2, cl [vl) — a question not before this court.

. The court notes that in Gold v Huntington Town House (64 AD2d 885, 887) — an action characterized by the dissenting Justice as "partially one for medical malpractice” — the court denied a motion to increase the ad damnum clause. The decision in Gold does not suggest, however, that any defendant therein moved against any portion of the ad damnum clause pursuant to CPLR 3017 (subd [c]).

. Defendant hospital is as adversely affected by the inclusion of plaintiff wife’s $1,500,000 demand in the ad damnum clause in connection with her claim against defendant doctor as it would be if this demand were expressly interposed in connection with plaintiffs first and fourth claims against it — claims which, though measured by a different legal standard, are based upon the same injury. Defendant hospital does not lack standing, therefore, to request that this monetary demand be stricken from the ad damnum clause based on CPLR 3017 (subd [c]).