[No. 46896–6.   En Banc.   December 31, 1980.]

DONALD McNEAL, *Respondent*, v. F. F. ALLEN, ET AL, *Appellants*, L. W. KAHN, ET AL, *Respondents*.

*William H. Mays* (of *Gavin, Robinson, Kendrick, Redman & Mays*), for appellants.

*L. W. Kahn,* pro se, and *John Haggerty* (of *Mathew D. Griffin, Inc., P.S.*), for respondents.

ROSELLINI, J.—The respondent brought this action for medical malpractice, seeking damages in the amount of $500,000. Responding to the complaint, the appellants asserted a counterclaim that this allegation violated RCW 4.28.360, and was injurious to the reputation and peace of mind of the appellant doctors. They also filed a third party complaint against the respondent attorneys based upon the same allegations. These pleadings were dismissed upon motion of the respondents. At the same time, the amount of the alleged damage was stricken from the complaint.[1]

RCW 4.28.360 provides:

> In any civil action for personal injuries, the complaint shall not contain a statement of the damages sought but shall contain a prayer for damages as shall be determined. A defendant in such action may at any time request a statement from the plaintiff setting forth separately the amounts of any special damages and general damages sought. Not later than fifteen days after service of such request to the plaintiff, the plaintiff shall have served the defendant with such statement.

---

[1] It is not disputed that the statement of the amount of damages claimed was inadvertent. Prior to the enactment of RCW 4.28.360, the amount of the claim properly was included in the complaint, both under statute (RCW 4.32.040(3)) and court rule (CR 8(a)). This practice was deemed necessary to give notice to the defendant, and because of the rule that the judgment may not exceed the amount claimed in the complaint, unless the claim has been amended before the case has been submitted. *See McKelvie v. Hackney,* 58 Wn.2d 23, 360 P.2d 746 (1961); *Ware v. Phillips,* 77 Wn.2d 879, 468 P.2d 444 (1970). Whether, under RCW 4.28-.360, that rule has been abrogated in personal injury actions, is a question not presently before the court.

The trial court correctly held that the statute is procedural, rather than substantive, and reveals no legislative intent to abrogate the common law rule that allegations in pleadings are absolutely privileged and cannot form the basis for a damage action.

This rule is found in the law of defamation.

■■ Allegedly libelous statements, spoken or written by a party or counsel in the course of a judicial proceeding, are absolutely privileged if they are pertinent or material to the redress or relief sought, whether or not the statements are legally sufficient to obtain that relief. *Gold Seal Chinchillas, Inc. v. State,* 69 Wn.2d 828, 420 P.2d 698 (1966). The defense of absolute privilege or immunity avoids all liability. *Gold Seal Chinchillas, Inc. v. State, supra;* W. Prosser, *Torts* § 114 (4th ed. 1971); Restatement (Second) of Torts §§ 586–87 (1977). The amount of damages is obviously pertinent to the relief sought, and allegations with respect to it fall within the protection of the rule.

The privilege of attorneys is based upon a public policy of securing to them as officers of the court the utmost freedom in their efforts to secure justice for their clients. The attorney's purpose in publishing defamatory matter, his belief in its truth, or even his knowledge of its falsity, are of importance only in determining the amenability of the attorney to the disciplinary power of the court of which he is an officer. *See* Restatement (Second) of Torts § 587 (1977). In the same vein, the privilege of parties to judicial proceedings is based upon the public interest in according to all men the utmost freedom of access to the courts of justice for the settlement of their private disputes. Restatement (Second) of Torts, *supra.*

The fact that statements made in pleadings are absolutely privileged does not mean that an attorney may abuse the privilege with impunity. As we pointed out in *Twelker v. Shannon & Wilson, Inc.,* 88 Wn.2d 473, 564 P.2d 1131 (1977), the attorney is subject to the supervision and discipline of the court. Under CR 12(f), immaterial, impertinent or scandalous matter may be stricken from the pleadings.

The court may reprimand, fine and punish, as well as expunge from the records statements which exceed proper bounds. *Twelker, supra.* These are all procedures by which the court can see that attorneys abide by the provisions of RCW 4.28.360.

This section originated as part of a bill to regulate and restrict malpractice actions. The bill was amended and enacted in Laws of 1975, 2d Ex. Sess., ch. 56. As originally proposed the section applied only to such actions. It was amended to apply to all personal injury actions and was made a part of RCW 4.28, pertaining to commencement of actions.

The parties are agreed that the records of the legislature are silent as to the reasons for the enactment. The defendants quote from a *Report of the Secretary's Commission on Medical Malpractice,* Department of Health, Education and Welfare, at page 38, which indicates that its purpose was to eliminate unnecessary friction caused between the medical and legal professions by claims for "astronomical damages." According to the report, such claims

> attract sensational newspaper coverage, impose needless anxiety and often unfounded notoriety upon defendant physicians, create a feeling of unfair persecution in the medical world and are of no special benefits to the plaintiff–patient.

It has also been suggested that publication of the fact that a patient is suing his doctor for a large sum may inspire others to bring similar suits, and that it may influence prospective jurors.

We do not know which, if any, of these considerations the legislature had in mind. Whatever the reasons for introducing this procedural innovation, the legislature made it apply to all personal injury actions, not just to medical malpractice actions.

The appellants maintain that the disciplinary actions which may be taken by the trial court are inadequate, because the damage has already been done with the filing of the complaint. For this reason, they suggest that the

court should find implied in the statute a right of action for noncompliance with its provision. While a cause of action for damages might be a greater deterrent to deliberate disregard of the statutory provisions, there is no reason to anticipate that deliberate violations will occur. There is no showing that the legislature had any such prospect in mind. It is to be presumed that officers of the court will endeavor to abide by the rules governing procedure. When a violation does occur, it will be more than likely due to inadvertence springing from force of habit, as was the case here, than to willful disregard of the statute. The sanctions which the court may impose should be sufficient to correct old habits within a reasonable time, and if deliberate violations occur, the court can make the punishment severe enough to discourage emulation.

When similar provisions have been before the courts of Pennsylvania and New York (the only jurisdictions in which we find any authorities upon this subject), they have been held to be procedural, rather than substantive; and the remedy afforded has been to strike the offending allegations. *See Dries v. Gregor,* 90 Misc. 2d 398, 395 N.Y.S.2d 135 (1977); and *Paytas v. Pennsylvania Power & Light Co.,* 29 Lehigh County L.J. 448 (C.P. 1959).

■ We can find in the statute no hint that the legislature intended to do anything more than amend a procedural rule. It recognized that the rule was procedural, rather than substantive, when it included it in the chapter dealing with pleadings. Furthermore, the statute, being in derogation of the common law, must be strictly construed and no intent to change that law will be found, unless it appears with clarity. *In re Estate of Tyler,* 140 Wash. 679, 684, 250 P. 456, 51 A.L.R. 1088 (1926); *Kuehn v. Faulkner,* 136 Wash. 676, 241 P. 290, 45 A.L.R. 571 (1925); *Gem Trading Co. v. Cudahy Corp.,* 22 Wn. App. 278, 588 P.2d 1222 (1978), *aff'd on other grounds,* 92 Wn.2d 956, 603 P.2d 828 (1979). Nowhere in the section is there expressed an intent to create a cause of action for noncompliance with

the procedural requirement set forth therein, nor is there any language from which such an intent can be implied.

The judgment is affirmed.

STAFFORD, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., and HAMILTON, J. Pro Tem., concur.

BRACHTENBACH, J. (dissenting)—The majority holds that an issue not before the court is dispositive. It misstates the procedural posture of this case and thereby bolsters and bottoms its rationale upon those erroneous statements.

The majority states: "the appellants asserted a counterclaim that this allegation violated RCW 4.28.360, and was injurious to the reputation and peace of mind of the appellant doctors." In fact the defendant doctors did not label the nature of their claim nor did they, at any point, *plead* injury to their reputation and peace of mind.

The original defendants in their counterclaim allege that the complaint, by claiming damages of $500,000, violated RCW 4.28.360 and, as a result they "have been damaged in an amount as shall be determined at the time of trial." Identical allegations are made in the third party complaint against plaintiff's attorneys.

Counterclaimants and the third party plaintiffs are the two doctors who were defendants below. They will be referred to as appellants. Plaintiff and the third party defendants, plaintiff's attorneys, will be referred to as respondents.

Respondents made two motions: first, to dismiss the counterclaim and the third party complaint based upon the records and files and the affidavit of plaintiff's attorney solely upon the basis that "defendant's [*sic*] claim is spurious and violates CR 14" and second, a motion for judgment on the pleadings. Only in a brief to support the motions is the question of privilege in pleadings raised.

In affidavits opposing the motions to dismiss, defendant doctors attached a copy of the newspaper articles showing the amount claimed in the malpractice complaint, $500,000,

they stated that persons and organizations had expressed concern over the amount claimed and there was a statement in the affidavit that each doctor believed his reputation as a medical doctor had been injured and he had been caused considerable embarrassment. As demonstrated later, these affidavits should not be considered.

In their opening brief, reply brief and oral argument, appellants deny any claim based upon defamation. There is merit to their position which will be discussed later.

The majority states that the amount of damages was stricken from the complaint. It is true that plaintiff moved for an order to amend his complaint by deleting the dollar amount of damages. That motion was made in specific reliance upon CR 15(a) which requires leave of court to amend under the circumstances present here. No such order appears in the record; necessarily, the stated dollar amount remains in the complaint since it has never been properly amended so far as the record on appeal is concerned. The order of dismissal of the counterclaim and third party complaint was entered but no judgment of dismissal is in the record as directed by the order of dismissal.

The majority states that "the trial court correctly held that the statute [RCW 4.28.360] is procedural rather than substantive." The trial court made no such ruling. The order of dismissal stated that the language in plaintiff's complaint is privileged and that defendant doctors have failed to make and by the nature of the action cannot make a claim for special damages. There is nothing to support the majority's assertion. In fact, in his oral ruling, the trial judge stated: "I really don't know what the legislature intended when they enacted that particular statute, whether they intended to create a remedy by and for the defendant or whether or not it was just a procedural matter that the court could and should expunge even on his own motion."

The majority then leaps to several conclusions: (1) the statute is procedural because it is included within the chapter dealing with pleadings; (2) the damage allegation is

privileged because of the law of defamation; (3) there is no legislative intent to create a claim for violation of the statute (even though the majority fails to discuss what the legislative intent was); and (4) that court imposed sanctions against the offending attorney are adequate even though it never determines that this was the legislative intent.

The majority dismisses out of hand the appellants' argument that a claim is necessarily implied by the statutory prohibition against stating the amount of damages claimed. That is the dispositive issue here, but the majority does not discuss a single case cited by appellants in support of their theory.

Before turning to the central issue, note must be made of some confusion in the motions employed by respondents. There was a "motion to dismiss per CR 14." That rule deals with third party practice. The only basis alleged is that the claim is spurious and violates CR 14. The first reason is not a ground for such motion. The court found no violation of the rule and joinder was proper. There is no appeal from that decision. The second motion, therefore, is the only one viable. It alleges that it is based upon CR 12(b)(6)—failure to state a claim upon which relief can be granted. However, the motion then goes on to state that it is a motion for judgment on the pleadings which is a CR 12(c) motion, to which no reference is made by respondents.

If the respondents rely upon defendants' affidavits to bring the counterclaim and third party complaint within the defamation action, their motion becomes one for summary judgment. CR 12(c). *See* CR 7(a) for definition of pleadings. If the affidavits were considered, then the order of dismissal does not meet the specificity requirements of a summary judgment order. The trial judge did not certify any record of proceedings. *American Universal Ins. Co. v. Ranson,* 59 Wn.2d 811, 815, 370 P.2d 867 (1962).

Respondents are thereby precluded from an assertion that the counterclaim and third party complaint sound in defamation due to the affidavits of defendant doctors. Thus

our analysis must be limited to the language of the counterclaim and the third party complaint which are totally devoid of any allegation of defamation.

Consequently respondents must overcome the substantial hurdle imposed by this court's test for application of a true CR 12(b)(6) motion.

> We have repeatedly said that a motion made pursuant to CR 12(b)(6) must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.

(Citations omitted.) *Corrigal v. Ball & Dodd Funeral Home, Inc.*, 89 Wn.2d 959, 961, 577 P.2d 580 (1978).

Does it appear *beyond a doubt* that the appellants can prove *no set of facts* which would entitle them to relief? I submit that, based upon the pleadings and the foundation for the motion to dismiss it is grievous error to deny the claim of appellants *at this stage.*

There are two reasons for my position. First, any discussion of and ruling on a defamation action is premature. It is not alleged to be the basis of the appellants' claims. It is rejected forcefully by appellants. The affidavits which might inject an element of defamation were not relied upon by appellants. If the movants are bound by the civil rule which they assert, and they should be so bound, those affidavits are not even before us for consideration.

The respondents should not gain a gratuitous ruling on a theory not yet in the case, particularly when it is their motion which created the problem and when the appellants specifically disclaim reliance upon that theory.

If appellants are allowed to go forward with their claim, as they should be, and if their proof falls within the scope of a defamation claim, then and only then can and should the matter be dealt with. We should not prejudge a nonexistent theory. Nor should we prejudge and indeed fail to discuss, as does the majority, the possible modification of the pleading privilege rule by enactment of RCW 4.28.360, a point raised by appellants.

Second, we should hold that RCW 4.28.360 created an implied cause of action upon which appellants may assert their claims.

It has long been recognized that a legislative enactment may be the foundation of a right of action. In *Texas & Pac. Ry. v. Rigsby,* 241 U.S. 33, 39, 60 L. Ed. 874, 36 S. Ct. 482 (1916), the Supreme Court summarized the principle:

> A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied . . .

Indeed, we may trace the principle back to 1703. In *Anonymous,* 87 Eng. Rep. 791 (1703), it is declared:

> for where–ever a statute enacts anything, or prohibits anything, for the advantage of any person, that person shall have remedy to recover the advantage given him, or to have satisfaction for the injury done him contrary to law by the same statute; for it would be a fine thing to make a law by which one has a right, but no remedy but in equity . . .

A variety of statutory regulatory schemes become involved. Violation may carry a penal penalty, may provide administrative procedures or may be entirely silent on remedy, but yet be held to create a private civil remedy. McMahon & Rodos, *Judicial Implication of Private Causes of Action: Re Appraisal and Retrenchment,* 80 Dick. L. Rev. 167 (1976); Note, *Implied Causes of Action in the State Courts,* 30 Stan. L. Rev. 1243 (1978). *See Sellinger v. Freeway Mobile Home Sales, Inc.,* 110 Ariz. 573, 521 P.2d 1119 (1974); *Wetherton v. Growers Farm Labor Ass'n,* 275 Cal. App. 2d 168, 174, 79 Cal. Rptr. 543 (1969): "Violation of a statute embodying a public policy is generally actionable even though no specific remedy is provided in the statute; any injured member of the public for whose benefit the statute was enacted may bring an action . . ."; *Heimgaertner v. Benjamin Elec. Mfg. Co.,* 6 Ill. 2d 152, 155, 128 N.E.2d 691, 693 (1955): "When a statute is enacted for the protection of a particular class of individuals, a violation of

its terms may result in civil as well as criminal liability, even though the former remedy is not specifically mentioned therein."; *Sherman v. Field Clinic,* 74 Ill. App. 3d 21, 392 N.E.2d 154, 160 (1979); *Pompey v. General Motors Corp.,* 385 Mich. 537, 189 N.W.2d 243 (1971); *King Resources Co. v. Environmental Improvement Comm'n,* 270 A.2d 863 (Me. 1970); *Brinkmann v. Urban Realty Co.,* 10 N.J. 113, 89 A.2d 394 (1952).

The prestigious Restatement of Torts has recognized and approved this substantial body of case law in providing:

When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

4 Restatement (Second) of Torts § 874A (1979).

Because of the varied language of statutes under consideration, the courts have focused upon differing elements to determine if an implied remedy exists. A frequently cited test is enunciated in *Cort v. Ash,* 422 U.S. 66, 78, 45 L. Ed. 2d 26, 95 S. Ct. 2080 (1975):

In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," *Texas & Pacific R. Co. v. Rigsby,* 241 U. S. 33, 39 (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? See, *e.g., National Railroad Passenger Corp. v. National Assn. of Railroad Passengers,* 414 U. S. 453, 458, 460 (1974) (*Amtrak*). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? See, *e.g., Amtrak, supra; Securities Investor Protection Corp. v. Barbour,* 421 U. S. 412, 423 (1975); *Calhoon v. Harvey,* 379 U. S. 134 (1964). And finally, is

the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? See *Wheeldin v. Wheeler*, 373 U. S. 647, 652 (1963); cf. *J. I. Case Co. v. Borak*, 377 U. S. 426, 434 (1964); *Bivens* v. *Six Unknown Federal Narcotics Agents*, 403 U. S. 388, 394–395 (1971); *id.*, at 400 (Harlan, J., concurring in judgment).

In analyzing a statute to determine whether an implied cause of action is created, we must be mindful of our duty "to be alert to provide such remedies as are necessary to make effective" the legislative purpose. *J.I. Case Co. v. Borak*, 377 U.S. 426, 433, 12 L. Ed. 2d 423, 84 S. Ct. 1555 (1964).

Let us apply the criteria of the *Cort* case to RCW 4.28-.360. Are the appellants one of the class for whose benefit the statute was enacted? The question is answered by a question. For whose benefit except defendants could the statute have been enacted? It denies to the plaintiff the right to state a specific dollar amount which some plaintiffs' attorneys may deem to their benefit in placing before the trier of fact the plaintiff's estimate of damages. It can only be to the benefit of the defendant that the amount of damages sought is not allowed in the complaint. The necessity of the defendant to be apprised of the maximum damages sought is protected by his right to request a statement of damages from the plaintiff. Thus it seems clear that only defendants can benefit from the statute and they are the class for whose benefit the statute was enacted.

The second question is whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? There is no explicit expression of intent to create or deny a remedy. As the parties concede, there is no legislative history of assistance. However, we agree with the West Virginia court which observed:

Such history would not necessarily be decisive in any event, since . . . the omission of an express right of

action in the statute typically occurs against a background of legislative silence or ambiguity on this question.

*Hurley v. Allied Chem. Corp.,* __ W. Va. __, 262 S.E.2d 757, 763 (1980).

We must therefore determine whether there is any indication of legislative intent to implicitly create such a remedy. I believe there is. As pointed out in *Hurley v. Allied Chem. Corp., supra* at 764, we can assume that the legislature is aware of the doctrine of implied statutory causes of action and also assume that the legislature would not enact a remedial statute granting rights to an identifiable class without enabling members of that class to enforce those rights. Without an implicit creation of a remedy, the statute is meaningless.

The majority seeks refuge in the fact that an attorney is subject to supervision and discipline of the court and that immaterial matters may be stricken. I agree with the appellants that such is totally ineffectual in accomplishing the purpose of RCW 4.28.360. At that stage the damage has occurred. Anyone aware of the tensions and debates between the legal and medical professions knows of the bitter criticism aimed at media coverage surrounding a malpractice action and particularly the claimed dollar amount. It is naive to assume that equal publicity will be given to a motion to strike after the original publicity has already occurred. This case is a perfect example. There was a full newspaper report stating the amount of the claim. So far as the record shows, no publicity was given to the plaintiff's effort to eliminate the prayer for a specific dollar amount.

The willingness of the majority to content itself with an after–the–fact sanction of some vague nature will be of little aid to the parties who have a statutory right prohibiting the very action which the majority allows.

The majority concedes that a cause of action for damages might be a greater deterrent to deliberate disregard of the statutory provisions but concludes that there is no reason

to anticipate that deliberate violations will occur and that there is no showing that the legislature had any such prospect in mind. In so doing, the majority ignores the admission by the plaintiff's attorney in his argument on the motion to dismiss. That attorney stated: "We filed our pleadings in this court in a privileged sanctuary and we did so solely on the basis, *perhaps inadvertently, but not really, I was aware of the statute,* but somehow or other in our general pleading we still continue in various types of cases stating the damages from time to time." (Italics mine.)

The third factor to be considered is whether an implicit cause of action is consistent with the underlying purpose of the legislative scheme. It is not only consistent with the legislative prohibition but is essential to carry out that philosophy. If a plaintiff can obtain the advantage, real or imagined, of infecting an entire community, including potential jurors, with the knowledge of the plaintiff's claim of a half million dollars damages, then the legislature was wasting its time and performing a useless act in enacting the statute. Allowing a cause of action is necessary to achieve the result of the statute. *J.I. Case Co. v. Borak, supra.* The majority simply ignores the idea that the statute is designed to compensate a defendant for harm he may suffer if the statute is violated. It examines only the deterrent effect; none of the remedies suggested by the majority protect defendant from the harm he may suffer when the statute is violated. When a remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the court should be decidedly receptive to its implication under the statute. *Cannon v. University of Chicago,* 441 U.S. 677, 703, 60 L. Ed. 2d 560, 99 S. Ct. 1946 (1979).

The fourth element of the *Cort* tests concerning federalism is not germane to this case.

The majority attempts to justify its result by characterizing the statute as merely an amendment of a procedural rule. It has determined this because the section was included in the chapter dealing with what it characterizes

as pleadings. Actually the chapter is entitled commencement of actions, RCW 4.28. The majority fails to explain how this invocation of the magic word "procedural" somehow determines the whole matter. If the majority's point is of any consequence, it should be noted that chapter 4.28 concerns such fundamental matters as when jurisdiction is acquired, how civil actions are commenced, service, rights of unknown claimants and heirs and other matters of a substantial nature. I am unpersuaded.

Finally the majority relies upon two cases. In *Dries v. Gregor,* 90 Misc. 2d 398, 395 N.Y.S.2d 135 (1977), the court was construing a statute which prohibited a statement of the amount of damages in an action for medical malpractice. The question was whether that statute was retroactive or only prospective. It has nothing to do with the creation of a cause of action. In a subsequent case, the New York court notes that if plaintiffs were permitted to plead the amount of damages the purpose of the statute would be defeated. The court notes a report of a special advisory panel on medical malpractice stating the purpose of the statute is to avoid adverse publicity and eliminate a special irritant to the medical profession. A similar statement of purpose was before our legislature in *The Malpractice Issue in Washington,* Health Policy Analysis Program, page 82. It accords with the report of the Department of Health, Education and Welfare cited by the majority. *Pizzingrilli v. Von Kessel,* 100 Misc. 2d 1062, 1065–66, 420 N.Y.S.2d 540, 543 (1979).

The second case cited by the majority is *Paytas v. Pennsylvania Power & Light Co.,* 29 Lehigh County L.J. 448 (C.P. 1959). Contrary to the assertion of the majority, there is no discussion of procedural versus substantive matters nor was a remedy to strike even discussed. The court was interpreting a Pennsylvania civil procedural rule which limited a plaintiff to stating an amount necessary to establish jurisdiction of the court. The court said: "Some day we shall penalize a plaintiff for violating this rule when we

believe the violation was for the purpose of gaining publicity to impress prospective jurors with the enormity of a loss." They found that there was no harm in that case since there were some 15 months since the filing of the complaint before it could come to trial. It simply does not support the majority's reliance.

I dissent.

UTTER, C.J., concurs with BRACHTENBACH, J.