**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| DINITIA HARRIS and, RODERICK HARRIS, each individually and on behalf of the ESTATE OF ALLEN HARRIS, and the beneficiaries of the Estate, | ) ) ) ) ) | No. 81179-7-I |
| | ) | DIVISION ONE |
| Respondents, | ) ) | |
| v. | ) ) | |
| FEDERAL WAY PUBLIC SCHOOLS, a local government entity, | ) ) ) | PUBLISHED OPINION |
| Appellant. | ) ) ) | |

MANN, C.J. — Sixteen-year-old Allen Harris fatally suffered a sudden cardiac arrest during a summer football conditioning workout at Federal Way High School (FWHS).  Allen's parents Dinitia and Roderick Harris, individually and on behalf of the estate (Estate), sued the Federal Way Public School District (District).[1]  The Estate alleged, in part, that the District owed an enhanced and solemn duty of reasonable care to protect its students.  The Estate asserted that the District breached that duty by, among other things, failing to create a medical emergency response plan, failing to

_____

[1] We refer to Allen by his first name to avoid confusion.  We mean no disrespect.

No. 81179-7-I/2

properly train its coaches, failing to provide prompt and immediate medical attention, and otherwise failing its obligations to protect student athletes in its charge from foreseeable harms including those caused by sudden cardiac arrest.

We granted discretionary review to consider the District's appeal of the trial court's decision denying the District's motion for summary judgment and dismissal of the Estate's claims. The District argues that: (1) the trial court erred in not dismissing the Estate's negligent-training and negligent-supervision claim when it is undisputed that vicarious liability applies to the coaches' conduct, (2) the trial court erred in failing to apply the RCW 4.24.300(4) gross-negligence standard to the Estate's vicarious liability claim, and (3) the District's coaches exercised at least slight care as a matter of law. We disagree and hold that the District owed a duty to Allen arising out of the special relationship between school and student. We also hold that RCW 4.24.300(4) applies to individual employees and not the District. We affirm.

## FACTS

On July 24, 2018, the FWHS football team held an optional official summer football conditioning workout.[2] Coaches Carl Green, Jared Wren, and Elijah Miller supervised the workout. Coach Green was in charge of the practice. During football practices, FWHS normally has an athletic trainer present. During summer conditioning, including the July 24 workout, FWHS does not have their athletic trainer present. Approximately 25 players were in attendance. The temperature started in high 70s and reached the low to mid-80s during the day. The players finished three wind sprints and

---

[2] Our de novo review of a decision on summary judgment construes the facts in a light most favorable to the nonmoving party—in this case, the Estate. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

No. 81179-7-I/3

were returning to the goal line for the fourth set of sprints. They had been sprinting for 15 to 20 minutes. At approximately 2:39 p.m., and prior to starting the fourth set of sprints, Allen collapsed and began having what appeared to be seizures. Allen had no history of seizures and no head trauma when he collapsed.

Coach Green took control of the situation, describing Allen as initially unresponsive with "eyes back in his head and seizing." Coach Miller called 911 at 2:39:38 p.m. Miller told the 911 dispatcher that Allen was unconscious and seizing. Approximately 5 minutes into the 911 call, Coach Miller again told the dispatcher that Allen was "still not conscious." No one performed cardiopulmonary resuscitation (CPR) and no one went to obtain the school's automated external defibrillator (AED). According to Coach Green, it would have taken 15 to 20 seconds to retrieve the nearest AED located in the stadium office. Coach Miller testified that he did not know where the AEDs were located at the time Allen collapsed. Coach Green believed Allen's seizure was heat related and asked another player to pour cold water on his head.

The EMTs arrived at the field at 2:47:15 p.m. and were at Allen's side at 2:48:30 p.m. The EMT report stated, "16 y/o male, cardiac arrest, witnessed collapse, no med hx, PT at football practice, no complaints prior to collapse. PT found unconscious and unresponsive, pulseless." The EMTs began CPR at 2:49 p.m., and the first AED shock was administered at 2:52 p.m. The estimated time from collapse to the first CPR was 10 minutes and the time from collapse to the first AED shock was 12 minutes and 22

seconds. Allen was transported to St. Francis Hospital where he died approximately two hours later. Sudden cardiac arrest was the only diagnosis to explain Allen's death.[3]

On February 9, 2019, the Estate brought the underlying action for negligence against the District. The Estate did not name the individual FWHS coaching staff. The Estate alleged, in part, that the District owed an enhanced and solemn duty of reasonable care to protect its students. The Estate asserted that the District breached that duty by, among other things, failing to create a medical emergency response plan, failing to properly train its coaches, failing to provide prompt and immediate medical attention, and otherwise failing its obligations to protect student athletes in its charge from foreseeable harms including those caused by sudden cardiac arrest.

The District moved for summary judgment on two grounds. First, the District moved to dismiss the Estate's direct claims for negligent training and supervision of its coaches. The District argued that negligent training and supervision were not viable claims because vicarious liability applies. Second, the District moved to dismiss the vicarious liability claim. Under RCW 4.24.300(4), the District argued, the coaches' conduct must be judged under a gross negligence standard. The District asserted, as a matter of law, that the coaches exercised at least slight care—they responded to what they believed was a seizure.

The Estate opposed summary judgment. The Estate provided testimony of experts establishing its prima facie case of negligence against the District based on its common law duty to Allen arising out of its special relationship.

---

[3] Sudden cardiac arrest, or SCA, is the "sudden onset of an abnormal and lethal heart rhythm, causing the heart to stop beating and the individual to collapse."

No. 81179-7-I/5

Dr. John Spengler, a professor in the Department of Health Promotion and

Community Health Sciences at Texas A&M University, testified:

> Based on my review of the evidence in this case and based on my knowledge, training, and experience, it is my opinion that the Federal Way Public School District failed to create and implement an effective Emergency Action Plan,[4] failed to train their coaches to identify and respond to [sudden cardiac arrest] and that these failures, among others, led to critical delays that ultimately cost Allen Harris his life. The coaches were not prepared to respond to medical emergencies, failed to identify that Allen was having a sudden cardiac arrest, and failed to respond appropriately. No one performed CPR and the nearby AED was not obtained and was not used.

Patrick Jenkins, the former head athletic trainer for the University of Washington,

testified:

> It is my opinion that a properly trained coach or athletic trainer would have immediately identified the classic signs of [sudden cardiac arrest] and that appropriate steps would have been taken. These include CPR and obtaining the AED located in the stadium office. The AED was 20-30 seconds away and could have been applied within a timely manner. Had this occurred, it is more likely than not that Allen Harris' death would have been avoided.

Dr. Jonathan Drezner, a professor of medicine with the University of Washington

and the team physician for the Seattle Seahawks and University of Washington

Huskies, opined:

> Federal Way High School and the Federal Way School District did not prepare their coaches or staff to properly and effectively recognize and manage [sudden cardiac arrest] in a student athlete.

---

[4] Dr. Spengler noted what such an emergency plan entailed:
An EAP is an emergency action plan which is the single most important plan for sport safety. Given the prevalence and importance of Sudden Cardiac Arrest, this is a critical element of the plan. EAPs have been an important and well-known safety component of sport safety for decades. An EAP provides a plan or roadmap for what to do in an emergency. A medical EAP would address life threatening emergencies such as sudden cardiac arrest. State governing bodies such as OSPI, WASBO, and WIAA require communication and coordination of the EAP. It is also commonly understood by national associations and recommending bodies that communication and coordination of the EAP is of critical importance.

No. 81179-7-I/6

   a. Some coaches were not trained according to district and/or WIAA [Washington Interscholastic Activities Association] policy.
   b. There was no scheduled practice drill, review or rehearsal of a medical emergency response for [sudden cardiac arrest].
   c. No administrator, school health professional, or certified athletic trainer ever reviewed or practiced the emergency action plan for [sudden cardiac arrest] with the football coaches.
   d. WIAA training clearly states to assume [sudden cardiac arrest] in a collapsed and unresponsive athlete with seizure-like activity.
     i. The cause of Allen Harris's collapse was misinterpreted as a seizure by the responding coaches.
     . . . .
     ii. This led to critical delays in CPR and defibrillation.
   e. The lack of training and emergency preparedness is below state and national standards of care and does not fulfill requirements within 2013 Washington State law (Substitute House Bill 1556; Guidelines for Medical Emergency Response and Automated External Defibrillator Program Implementation).

He further testified that Allen would have survived but for the District's negligence: "[i]f his [sudden cardiac arrest] was properly recognized and promptly treated after collapse it is more likely than not that Allen Harris would still be alive."

The trial court denied summary judgment. We granted discretionary review under RAP 2.3(b)(1).

ANALYSIS

We review an order on summary judgment de novo. Meyers v. Ferndale Sch. Dist., 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). "Summary judgment is appropriate where there is no genuine issue as to any material fact, so the moving party is entitled to judgment as a matter of law. We view the facts and reasonable inferences in the light most favorable to the nonmoving party." Meyers, 197 Wn.2d at 287. See also CR 56.

No. 81179-7-I/7

A. Direct Negligence Claim Against the District

The District argues first that the trial court erred in refusing to dismiss the Estate's direct negligence claim against the District because such claims are unavailable where it is undisputed that vicarious liability applies. While the Estate's negligence claim includes elements of negligent training and supervision, the District recasts the Estate's claim as one for negligent training and supervision. And then, relying primarily on Anderson v. Soap Lake Sch. Dist., 191 Wn.2d 343, 423 P.3d 197 (2018), and LaPlant v. Snohomish County, 162 Wn. App. 476, 271 P.3d 254 (2011), the District contends that claims for negligent training and supervision, and claims for vicarious liability, are mutually exclusive. Thus, according to the District, where, as here, an employee is acting within the scope of employment, the Estate is limited to a claim for vicarious liability and the Estate may not bring direct claims for negligence against the District.

The Estate contends that based on the special relationship between school districts and students, including student athletes, the District owed a common law duty of care to Allen to protect him from foreseeable risks of harm. We agree with the Estate and hold that the District had a distinct, direct, and nondelegable, duty to protect Allen from foreseeable harm.

1. Duty to Protect

Generally, there is no duty to prevent a third party from harming another unless "a special relationship exists between the defendant and either the third party or the foreseeable victim of the third party's conduct." Niece v. Elmview Grp. Home, 131 Wn.2d 39, 48, 929 P.2d 420 (1997). This is consistent with the Restatement:

-7-

No. 81179-7-I/8

> When a principal has a special relationship with another person, the principal owes that person a duty of reasonable care with regard to risks arising out of the relationship, including the risk that agents of the principal will harm the person with whom the principal has such a special relationship.

RESTATEMENT (THIRD) OF AGENCY § 7.05(2) (AM. LAW INST. 2006).

There is a special relationship between school districts and their students. "Washington courts have long recognized that school districts have 'an enhanced and solemn duty' of reasonable care to protect their students." N.L. v. Bethel Sch. Dist., 186 Wn.2d 422, 430, 378 P.3d 162 (2016) (quoting Christensen v. Royal Sch. Dist. No. 160, 156 Wn.2d 62, 67, 124 P.3d 283 (2005)). "They must 'protect the students in their custody from foreseeable dangers.'" Anderson, 191 Wn.2d at 367-68 (quoting N.L., 186 Wn.2d at 431). "As long as the harm was 'within the general field of danger which should have been anticipated,' it is foreseeable." Anderson, 191 Wn.2d at 368. The rational for imposing this duty on a school district is that the victim is placed under its control and protection, resulting in the student's loss to control themselves. N.L., 186 Wn.2d at 433-34.

The special relationship between a school district and its students extends to student athletes:

> A school district owes a duty to its students to employ ordinary care and to anticipate reasonably foreseeable dangers so as to take precautions for protecting the children in its custody from such dangers. This duty extends to students engaged in interscholastic sports. As a natural incident to the relationship of a student athlete and his or her coach, the student athlete is usually placed under the coach's considerable degree of control. The student is thus subject to the risk that the school district or its agent will breach this duty of care.

No. 81179-7-I/9

<u>Wagenblast v. Odessa Sch. Dist. No. 105-157-166J</u>, 110 Wn.2d 845, 856, 758 P.2d 968 (1988) (citing <u>Carabba v. Anacortes Sch. Dist. No. 103</u>, 72 Wn.2d 939, 955-57, 435 P.2d 936 (1967)).

Thus, regardless of whether there are separate possible causes of action against the coaches, or against the District under a theory of respondeat superior, there remains a separate cause of action against the District based on its common law special relationship. <u>See</u>, <u>e.g.</u>, <u>Swank v. Valley Christian School</u>, 194 Wn. App. 67, 83-85, 374 P.3d 245 (2016) (recognizing common law duty and potential statutory duty), <u>rev'd on other grounds</u>, 188 Wn.2d 663, 672, 398 P.3d 1108 (2017).

The District's reliance on <u>Anderson</u> is misplaced. <u>Anderson</u> involved claims against a school district for claims including negligent training and supervision, negligent protection, and vicarious liability, after a student died in a car accident after leaving her high school basketball coach's house intoxicated. <u>Anderson</u>, 191 Wn.2d at 347, 353. Addressing the negligent supervision claim, the court focused first on whether the coach was acting within their scope of employment. This matters, the court explained, because "an action based on negligent training and supervision 'is applicable <u>only</u> when the [employee] is acting outside the scope of his employment.'" <u>Anderson</u>, 191 Wn.2d at 361 (alteration in original) (Restatement (Second) of Torts § 317 cmt. a (Am. Law Inst. 1965)). Otherwise, where an employee is acting within the scope of employment, the employer is "'vicariously liable under the principles of the law of Agency' instead." <u>Anderson</u>, 191 Wn.2d at 361. Because the coach in <u>Anderson</u> was acting outside of his scope of employment, vicarious liability did not apply. <u>Anderson</u>, 191 Wn.2d at 363. And further, because there was no evidence that the district in <u>Anderson</u> knew the

-9-

No. 81179-7-I/10

coach would be serving alcohol to students off campus, the foreseeability element of a claim for negligent supervision failed.[5]

Because the District here concedes that the coaches were acting within the scope of employment, it contends that the Estate's claims for negligent training and supervision against the District collapse into claims for vicarious liability against the District for the coaches' conduct. The District relies on an overly narrow reading of Anderson. While the District is correct that Anderson concluded that where an employee acts within their scope of employment claims for negligent supervision and training should be addressed under vicarious liability, the court did not preclude a separate and distinct claim for negligence based on a special relationship. Indeed, after rejecting the plaintiff's claim for negligent supervision because there was no evidence that the district knew the coach presented a danger to others, the court went on to address the plaintiff's distinct claim against the district for negligently failing to protect from harm based on the special relationship between the district and student. Anderson, 191 Wn.2d at 367-372. Consequently, under Anderson, plaintiffs may still seek recovery against a school district where they can demonstrate the district was negligent in protecting a student from foreseeable harm.

The District's reliance on LaPlant is similarly misplaced. In LaPlant, Snohomish County employees acted negligently in the pursuit of a stolen car. LaPlant, 162 Wn. App. at 477. Snohomish County admitted that its employees' allegedly negligent conduct occurred within the scope of employment. Therefore, the court dismissed

---

[5] The court focused on the claim for negligent supervision and did not address whether a claim for negligent training might survive. Anderson, 191 Wn.2d at 364.

No. 81179-7-I/11

LaPlant's cause of action for negligent training and supervision because, under the facts of the case, the claim was superfluous where vicarious liability exists. LaPlant, 162 Wn. App. at 477. The court reasoned that both negligent training and supervision and the vicarious liability claims rest upon a determination that the deputies were negligent— and that this negligence was the proximate cause of LaPlant's injuries. LaPlant, 162 Wn. App. at 481.

LaPlant is readily distinguishable because there was no allegation of a special relationship between the plaintiff and the county. Thus, the LaPlant court did not consider whether their might be a distinct claim against the county for negligent protection. Consequently, LaPlant is inapposite here.

Niece is informative. In Niece, a resident brought an action against her group home after a staff member assaulted her. 131 Wn.2d at 42. The court first concluded that there was a special relationship between a group home for the developmentally disabled and its vulnerable residents. And, as a result, the group home had a duty to protect its residents from all foreseeable harms. Niece, 131 Wn.2d at 43-47.

The court went on to distinguish other theories of liability. Consistent with Anderson, the court confirmed the distinction between vicarious liability and negligent hiring, supervision, and retention.

> Vicarious liability, otherwise known as the doctrine of respondeat superior, imposes liability on an employer for the torts of an employee who is acting on the employer's behalf. Where the employee steps aside from the employer's purposes in order to pursue a personal objective of the employee, the employer is not vicariously liable. Whether or not the employer has any particular relationship to the victim of the employee's negligence or intentional wrongdoing, the scope of employment limits the employer's vicarious liability.

-11-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 81179-7-I/12

Niece, 131 Wn.2d at 48.

But then, importantly, the court continued: "[h]owever, the scope of employment is not a limit on an employer's liability for a breach of its own duty of care." Niece, 131 Wn.2d at 48. The court explained, that causes of action for negligent hiring, retention, and supervision are "based on the theory that 'such negligence on the part of the employer is a wrong to [the injured party], entirely independent of the liability of the employer under the doctrine of respondeat superior.'" Niece, 131 Wn.2d at 48 (quoting Scott v. Blanchet High Sch., 50 Wn. App. 37, 43, 747 P.2d 1124 (1987)). And further, that "the theory of liability for negligent supervision is based on the special relationship between the employer and employee, not the relationship between group home and resident." Niece, 131 Wn.2d at 49.

Consistent with Niece, the special relationship between the District and student athletes like Allen created a duty of reasonable care, owed by the District to its student athletes, to protect them from all foreseeable harms. This theory of liability is distinct from separate theories of liability based on negligent supervision and training, and vicarious liability.

In its complaint, the Estate brought an action for negligence alleging, in part, that the District owed an enhanced and solemn duty of reasonable care to protect its students. The Estate asserted that the District breached that duty by, among other things, failing to create a medical emergency response plan, failing to properly train its coaches, failing to provide prompt and immediate medical attention, and otherwise failing its obligations to protect student athletes in its charge from foreseeable harms including those caused by sudden cardiac arrest. In response to the District's motion

-12-

No. 81179-7-I/13

for summary judgment, the Estate responded with expert declarations supporting its claim that the District failed to protect Allen from the reasonably foreseeable harm of a sudden cardiac arrest, failed to properly implement its emergency action plan, failed to comply with District policies, and failed to ensure that coaches complied with WIAA training requirements. The trial court did not err in denying the District's motion for summary judgment.

    B.  RCW 4.24.300(4)

The District argues that the gross negligence standard of care afforded to school district employees under RCW 4.24.300(4) should extend to the District and not just its employees. We disagree.

At the outset, the District's argument concerning RCW 4.24.300 is premised on its theory that the District is only vicariously liable for the coaches' conduct. We agree that vicarious liability is derivative liability. Johns v. Hake, 15 Wn.2d 651, 655, 131 P.2d 933 (1942). Before an employer may be held vicariously liable, a plaintiff must establish tortious conduct on behalf of the employee. Robel v. Roundup Corp., 148 Wn.2d 35, 52-53, 59 P.3d 611 (2002). However, because we hold that the District has a special relationship to Allen, one that creates a duty to protect Allen from all reasonably foreseeable harms, we need not address whether the lower gross negligence standard of care the statute affords employees is imputed to the District. Instead, the only question before us is whether reduced standard of care in RCW 4.24.300 applies to direct claims against the District. It does not.

Determining the meaning of a statute is a question of law subject to de novo review. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 9-10, 43 P.3d 4

-13-

No. 81179-7-I/14

(2002). "The court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Campbell & Gwinn, 146 Wn.2d at 9-10. The plain meaning is derived from what the legislature said in the statute, and related statutes that disclose legislative intent about the provision in question. Only if, after that, the statute remains ambiguous, is it appropriate to resort to other aids, including legislative history. Campbell & Gwinn, 146 Wn.2d at 11-12.

Further, "our state is governed by the common law to the extent the common law is not inconsistent with constitutional, federal, or state law." RCW 4.04.010. Potter v. Washington State Patrol, 165 Wn.2d 67, 76-77, 196 P.3d 691 (2008). While the legislature can supersede, abrogate, or modify, the common law, "we are hesitant to recognize an abrogation or derogation from the common law absent clear evidence of the legislature's intent to deviate from the common law." Potter, 165 Wn.2d at 76-77. "A statute in derogation of the common law 'must be strictly construed and no intent to change that law will be found, unless it appears with clarity.'" Potter, 165 Wn.2d at 77 (quoting McNeal v. Allen, 95 Wn.2d 265, 269, 621 P.2d 1285 (1980)).

Turning first to the plain language of the statute, RCW 4.24.300(4) provides:

Any school district employee not licensed under chapter 18.79 RCW who renders emergency care at the scene of an emergency during an officially designated school activity or who participates in transporting therefrom an injured person or persons for emergency medical treatment shall not be liable for civil damages resulting from any act or omission in the rendering of such emergency care or in transporting such persons, other than acts or omissions constituting gross negligence or willful or wanton misconduct.

On its face, the plain language of the statute grants "any school district employee" rendering emergency care immunity from liability unless the acts or

-14-

No. 81179-7-I/15

omissions rise to "gross negligence" or are willful or wanton misconduct. Because this is a derogation of the common law standard of "reasonable care" that a school district owes its students, the statute must be strictly construed. N.L., 186 Wn.2d at 430 (school districts have an enhanced and solemn duty of reasonable care to protect their students). The plain language of RCW 4.24.300(4) applies only to school district "employees," not the school districts themselves.[6]

Consistent with the common law, the District's standard of care for its duty to protect students is one of ordinary care. Because there exists a genuine dispute of material fact as to whether the District breached its duty of ordinary care, the trial court did not error in denying the District's motion for summary judgment.

Affirmed.

_Mann, C.J._

WE CONCUR:

_Andrus, A.C.J._          _Appelwick, J._

---

[6] In other limited liability statutes the legislature has spelled out that immunity applies to both employers and employees. See, e.g., RCW 18.71.210(1)(g) (limiting liability to EMTs and government employers of EMTs for rendering medical services unless grossly negligent); RCW 4.24.550(8) (release of information on sex offenders); RCW 4.24.780 (providing firefighting services outside of jurisdiction or emergency care at the scene of an emergency).